2001 ME 70

**MORSE BROTHERS, INC. et al.**

v.

**Faylene WEBSTER et al.**

Supreme Judicial Court of Maine.

Argued Feb. 14, 2001.

Decided May 2, 2001.

**844**

James B. Haddow (orally), Thomas C. Bradley, Petruccelli & Martin, L.L.P., Portland, for plaintiffs.

Julian L. Sweet (orally), Jack H. Simmons, Berman & Simmons, P.A., Lewiston, James M. Bowie (orally), Thompson & Bowie, Portland, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Faylene Webster and James Platz appeal from a judgment of the Superior Court (Cumberland County, *Crowley, J.*) denying their special motion to dismiss a complaint for the wrongful use of civil proceedings. They contend that the court erred in denying their motion, filed pursuant to Maine's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, 14 M.R.S.A. § 556 (Supp.2000), because Morse Brothers, Inc. and MB Bagging Corporation (collectively, the Morse group) failed to establish that Webster and Platz filed appeals "devoid of any reasonable factual support or any arguable basis in law," and that they "caused actual injury" to the Morse group. *Id.* Webster and Platz also contend that MB Bagging lacks standing to allege the wrongful use of civil proceedings because MB Bagging was not a party to any of the appeals described in the complaint, and that Morse Brothers lacks standing to allege Webster and Platz's wrongful use of civil proceedings in appealing a permit granted to Tim Morse. The Morse group contends that the "final judgment rule" requires the dismissal of this appeal. Because we conclude that the court should have dismissed the Morse group's action pursuant to the anti-SLAPP statute, we vacate the judgment.

## I. BACKGROUND

[¶ 2] Morse Brothers has operated a bark mulching facility in Windham since 1984. MB Bagging packages the mulch at the facility. In 1993, the Department of Environmental Protection (DEP) required the facility to seek a license as a "solid waste facility." The DEP denied Morse Brothers' application for a license in 1996 based on findings that the facility polluted water, that Morse Brothers failed adequately to provide for traffic circulation, and that the soils on the site were unsuitable for the facility. With plans to move its facility from Windham, Morse Brothers obtained options on contiguous parcels of land (the Morse Brothers property) that straddle the town line between Auburn and Poland. In 1997, Morse Brothers applied for and obtained the approval of a site plan in Auburn and a conditional use permit in Poland, subject to the requirement that Morse Brothers obtain a license from the DEP.

[¶ 3] Faylene Webster owns property in Poland abutting the Morse Brothers property. James Platz owns property in Poland within half a mile of the Morse Brothers property, and has property and a business in Auburn. Webster, Platz, and others appealed the decisions of the two planning boards to the Superior Court. The court (Androscoggin County, *Crowley, J.*) denied the appeal of the Poland Board's decision because, despite some contradictory evidence in the record, the Poland Board did not abuse its discretion, commit legal error, or make findings unsupported by substantial evidence in the record. The court sustained the appeal of the Auburn Board's decision, concluding that the Auburn Board erred in approving, as an accessory use, a site plan that includes an access drive, offices, a fuel facility, a maintenance building, a waste storage area, scales, and a scale house. The

court concluded that the proposed accessory use is not permitted in the Auburn Agricultural Zone because the principal use, the bark mulching plant, located in Poland, would not be permitted in the Auburn Agricultural Zone.

[¶ 4] Morse Brothers obtained a conditional solid waste license from the DEP for the proposed bark mulching plant in 1998. Webster, Platz, and one other person appealed the decision to the Board of Environmental Protection (BEP), which added two new conditions regarding the boundary line for solid waste handling and the hours of operation for loading equipment, but otherwise affirmed the decision to grant the license. Webster, Platz, and their fellow plaintiff appealed the BEP's decision to the Superior Court (Androscoggin County, *Crowley, J.*) contending that there was insufficient evidence for the BEP to conclude that Morse Brothers could comply with DEP noise standards. Morse Brothers filed a cross appeal and a motion to dismiss the appeal as untimely filed and frivolous. The court denied Morse Brothers' motion to dismiss Webster and Platz's complaint, and dismissed the cross appeal upon motion by Webster and Platz. After oral argument, the court concluded that the BEP had not erred because it had based its decision on objective scientific evidence presented at the hearing, it included provisions for monitoring the actual noise levels, it properly placed the risk of future noncompliance on Morse Brothers, and its order was not unreasonable, unlawful, or unjust.

[¶ 5] Tim Morse, a principal at Morse Brothers, applied to the City of Auburn for an entrance permit for a truck terminal on the Auburn side of the site. After the City granted the permit in June of 1999, Webster and Platz appealed the decision to the Superior Court (Androscoggin County, *Crowley, J.*), contending that the access

drive for trucks would be an unlawful accessory use, that the City abused its discretion and committed legal errors, and that the City failed to provide proper notice when it approved the permit.

[¶ 6] On July 12, 2000, the court dismissed the drive entrance appeal for lack of standing. The court concluded that Webster and Platz failed to demonstrate a particularized injury from the proposed driveway cut, and that neither the ordinance nor any other source of law provided for judicial review.

[¶ 7] On June 28, 2000, before the court rendered a decision on the entrance permit appeal, Morse Brothers, together with MB Bagging, which plans to relocate its mulch packaging activities to the Morse Brothers property, filed a complaint seeking damages and an injunction to prevent Webster and Platz from commencing any other legal action or appeal regarding the Morse Brothers property unless they satisfy the Superior Court that the action or appeal presents a prima facie case. The complaint alleges that Webster and Platz brought all their appeals without probable cause, except for the successful appeal against the decision of the Auburn Board. Further, the complaint alleges that Webster and Platz maximized delay by filing their appeals when the appeal period had nearly expired, that the attorney for Webster and Platz made statements that his clients' goal was to delay, and that they intended to appeal the issuance of any building permits that are necessary to complete the project. In support of a motion for a preliminary injunction, the Morse group submitted court documents from the underlying appeals; the affidavit of Susan Oram, attorney for Morse Brothers in the Auburn and Poland site plan appeals; a scheduling letter for the site plan appeals from the Superior Court (Androscoggin County, *Delahanty, J.*); the af-

fidavit of John Conway, a member of the Poland Planning Board; and the affidavit of Benjamin Hawkins, vice president of Morse Brothers and president of MB Bagging.

[¶ 8] In response, Webster and Platz filed a special motion to dismiss the Morse group's complaint pursuant to 14 M.R.S.A. § 556, Maine's anti-SLAPP statute. According to Webster and Platz, Morse Brothers' suit was an attempt to gag them and prevent them from raising legitimate questions about any future permits for development of the Morse Brothers property. Webster and Platz submitted an affidavit from Platz to supplement the record.

[¶ 9] The court (Cumberland County, *Crowley, J.*) denied the special motion to dismiss on September 6, 2000. Webster and Platz filed a motion for findings of fact or for reconsideration pursuant to M.R. Civ. P. 59 and 60. The court denied the motion, after which Webster and Platz filed a notice of appeal pursuant to M.R. Civ. P. 73 and moved to stay proceedings pending a decision by the Law Court. The court granted the motion to stay pursuant to M.R. Civ. P. 73(f).

## II. DISCUSSION

[¶ 10] "SLAPP is an acronym for Strategic Lawsuit Against Public Participation. SLAPP litigation, generally, is litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants." *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.,* 37 Cal.App.4th 855, 44 Cal.Rptr.2d 46, 48 (1995). "The typical mischief that the [anti-SLAPP] legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects." *Duracraft Corp. v. Holmes Products Corp.,* 427 Mass. 156, 691 N.E.2d 935, 940 (1998). "SLAPP plaintiffs do not intend to win their suits;

rather they are filed solely for delay and distraction, and to punish activists by imposing litigation costs on them for exercising their constitutional right to speak and petition the government for redress of grievances." *Dixon v. Superior Court,* 30 Cal.App.4th 733, 36 Cal.Rptr.2d 687, 693 (1994) (citation omitted). "Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPPs." *Id.* (citation and internal quotation marks omitted). Maine enacted a statute in 1995 that allows a defendant to file a "special motion to dismiss" a SLAPP suit. 14 M.R.S.A. § 556. The statute provides, in part:

When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The court shall advance the special motion so that it may be heard and determined with as little delay as possible. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

*Id.*

### A. The Final Judgment Rule

[¶ 11] The Morse group contends that the court's discretionary, interlocutory

ruling denying the special motion to dismiss was not a final judgment from which Webster and Platz may appeal, and no exception to the final judgment rule applies. According to the Morse group, Webster and Platz failed properly to move that the Superior Court report the appeal to the Law Court pursuant to M.R. Civ. P. 72(c).[1]

[¶ 12] Webster and Platz contend that they are entitled to interlocutory review because courts in states that have anti-SLAPP statutes commonly grant review on an expedited basis. Further, Webster and Platz contend that the "death knell" and "judicial economy" exceptions to the final judgment rule apply because Webster and Platz will lose substantial rights if review is delayed until final judgment, *Cook v. Cook,* 574 A.2d 1353, 1354 (Me. 1990) (death knell), and because the review can finally dispose of the entire litigation and the interests of justice demand immediate review, *Dep't of Human Servs. v. Lowatchie,* 569 A.2d 197, 199 (Me.1990) (judicial economy).

[¶ 13] "It is well established that '[a]ppeals, in order to be cognizable, must be from a final judgment.'" *Bard v. Bath Iron Works Corp.,* 568 A.2d 1108, 1110 (Me.1990) (quoting *In re Erica B.,* 520 A.2d 342, 343 (Me.1987)). "The judicially created final judgment rule is based on sound reasoning. Among other goals, it promotes judicial economy and curtails interruption, delay, duplication and harassment. The rule saves an appellate court from deciding issues that may later be mooted by proceedings in other courts ...." *Lowatchie,* 569 A.2d at 199 (quoting *In re Erica B.,* 520 A.2d at 343).

[¶ 14] "Exceptions to the final judgment rule have been recognized and applied in those instances where its application would not further its purpose." *Id.* (citing *State v. Maine State Employees Ass'n,* 482 A.2d 461, 464 (Me.1984)). We have recognized exceptions to the rule without requiring a report pursuant to Rule 72(c), *see Dairyland Ins. Co. v. Christensen,* 1999 ME 160, 740 A.2d 43 (evaluating applicability of common law exceptions in the absence of a Rule 72(c) report). One such exception is the "death knell" exception, which permits interlocutory review if "substantial rights of a party will be irreparably lost if review is delayed until final judgment." *Webb v. Haas,* 1999 ME 74, ¶ 5, 728 A.2d 1261, 1264. "[T]he death knell exception is appropriate when the harms are imminent, concrete, and irreparable." *Lewellyn v. Bell,* 635 A.2d 945, 948 (Me.1993). The exception is applicable, for instance, where a court has denied a summary judgment raising a

---

1. M.R. Civ. P. 72(c) provides:

   **(c) Report of Interlocutory Rulings.** If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action in the Superior Court ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

   Had this appeal been commenced by notice of appeal on or after January 1, 2001, the Maine Rules of Appellate Procedure would apply. M.R.App. P. 24(c) provides:

   **(c) Report of Interlocutory Rulings.** If the trial court is of the opinion that a question of law involved in an interlocutory order or ruling made by it ought to be determined by the Law Court before any further proceedings are taken, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

claim of immunity. *Pratt v. Ottum,* 2000 ME 203, ¶ 15, 761 A.2d 313, 318.

[¶ 15] The anti-SLAPP statute calls for an expedited hearing of the motion, and provides a one-time opportunity to the defendant to shift the burden of proof to the plaintiff to establish that the underlying petitions or appeals of the defendant were devoid of support in fact or law. 14 M.R.S.A. § 556; *see also Donovan v. Gardner,* 50 Mass.App.Ct. 595, 740 N.E.2d 639, 642 (2000) (construing the Massachusetts anti-SLAPP statute, which is nearly identical to 14 M.R.S.A. § 556). Unlike a garden variety motion to dismiss, M.R. Civ. P. 12(b)(6), or a motion for summary judgment, M.R. Civ. P. 56(c), this motion is a statutory creature designed to protect certain defendants from meritless litigation.[2] Precluding the moving party from appealing a decision on the motion would result in continued litigation, which is the precise harm that the statute seeks to prevent. In these circumstances, the cost and delay of litigating the claim does constitute "a loss of substantial rights or permanent foreclosure of relief." *Dairyland,* ¶ 8, 740 A.2d at 45. We do not create a generic "cost of litigation exception [that] would swallow the final judgment rule . . . ." *Id.* Rather, we allow a limited exception to the final judgment rule for denials of special motions to dismiss pursuant to 14 M.R.S.A. § 556 because to deny review would have a chilling effect on the petitioning rights of the parties whom the statute seeks to protect.

**B. Standard of Review**

[¶ 16] Webster and Platz contend that the Law Court should review the motion *de novo* because the court did not hear testimony on the motion and the record contains all evidence presented. The Morse group contends that the Law Court should review only for clear error or abuse of discretion, similar to the standards applied in reviewing decisions on motions to dismiss, M.R. Civ. P. 12(b)(6), motions for summary judgment, M.R. Civ. P. 56, and motions for attachment, M.R. Civ. P. 4A.

[¶ 17] The anti-SLAPP statute provides that the court "*shall* grant the special motion" unless the responding party meets its burden of proof. 14 M.R.S.A. § 556. (emphasis added).[3] Because the special motion requires the consideration of both pleadings and affidavits, the standard of review should resemble the standard for reviewing a motion for summary judgment. *See Church of Scientology v. Wollersheim,* 42 Cal.App.4th 628, 49 Cal. Rptr.2d 620, 635–36 (1996) (recognizing that the requirement that the court consider pleadings and affidavits gives rise to a test similar to the summary judgment standard); *Duracraft,* 691 N.E.2d at 942 n. 16 ("A standard for summary judgment adopted in *Protect Our Mountain Env't, Inc. v. District Court,* 677 P.2d 1361 (Colo. 1984) . . . is a likely source of the standard for evaluating special motions to dismiss in the Massachusetts anti-SLAPP statute."); *cf. Hometown Properties, Inc. v. Fleming,* 680 A.2d 56, 63 (R.I.1996) (concluding that a motion for summary judgment is the

---

**2.** The Massachusetts Supreme Court has recognized that the competing interests in SLAPP suits present difficulties for courts. *Duracraft,* 691 N.E.2d at 943. "By protecting one party's exercise of its right of petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party's exercise of its right to petition, even when it is not engaged in sham petitioning." *Id.*

**3.** The Massachusetts Supreme Court expressly refused to adopt the Massachusetts Appeals Court's interpretation of the language "shall grant . . . [the] special motion" to mean "may" grant it. *Duracraft,* 691 N.E.2d at 943 (internal quotation marks omitted).

"appropriate motion" to file pursuant to the Rhode Island anti-SLAPP statute).

[¶ 18] We "review the judge's decision regarding such a special motion to dismiss to determine whether there was an abuse of discretion or error of law." *Vittands v. Sudduth,* 49 Mass.App.Ct. 401, 730 N.E.2d 325, 337 (2000) (citation omitted); *see Royal Ins. Co. v. Pinette,* 2000 ME 155, ¶ 4, 756 A.2d 520, 523 (summary judgments reviewed *de novo* for errors of law); *Black v. Ward,* 633 A.2d 81, 83 (Me. 1993) (pretrial rulings of trial courts reviewed for abuse of discretion or error of law). When reviewing the motion, the Court should view the evidence in the light most favorable to the moving party because the responding party bears the burden of proof when the statute applies. *See Kenny v. Dep't of Human Servs.,* 1999 ME 158, ¶ 3, 740 A.2d 560, 561 (discussing a motion for summary judgment); 14 M.R.S.A. § 556.

C. Application of the Anti–SLAPP Statute

[¶ 19] In deciding a special motion to dismiss, the court must first determine whether the claims against the moving party are based on the moving party's exercise of the right to petition pursuant to the federal or state constitutions.[4] 14 M.R.S.A. § 556;[5] *see Donovan,* 740 N.E.2d at 642 (construing Massachusetts statute). Here, the Morse group seeks to enjoin Webster and Platz from appealing decisions relating to the proposed development of the Morse Brothers property. The parties do not contest that the claims are based on Webster's and Platz's exercise of their constitutional rights of petition.

[¶ 20] Once the moving party has demonstrated that the statute applies, the burden shifts to the responding party to establish, through pleadings and affidavits, "that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party." 14 M.R.S.A. § 556; *see Donovan,* 740 N.E.2d at 642.

[¶ 21] Webster and Platz contend that the Morse group failed to establish that the appeals brought by Webster and Platz were "devoid of any reasonable factual support or any arguable basis in law ...." 14 M.R.S.A. § 556. We agree. Because none of Webster and Platz's actions were "devoid of any reasonable factual support

4. The Maine Constitution provides that "[t]he people have a right at all times in an orderly and peaceable manner to assemble to consult upon the common good, to give instructions to their representatives, and to request, of either department of the government by petition or remonstrance, redress of their wrongs and grievances." Me. Const. art. 1, § 15. The federal constitution provides that "Congress shall make no law ... abridging ... the right of the people peaceably to ... petition the Government for a redress of grievances." U.S. Const. amend. 1.

5. The anti-SLAPP statute provides, in relevant part, that
"a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
14 M.R.S.A. § 556.

or any arguable basis in law," we need not decide if the Morse group could sustain its burden if some but not all of Webster and Platz's actions were devoid of merit.

### 1. The Auburn/Poland Site Plan Appeals

[¶ 22] Webster and Platz contend that because the appeals of the Auburn and Poland site plan decisions had merit, the Morse group has failed to meet its burden of proof. They contend that there was substantial opposition to the site plans, and that Morse Brothers itself admitted to "noise problems" at the Windham plant. They contend that they had probable cause for initiating the appeal because they reasonably believed that the permits might be held invalid. *See* RESTATEMENT (SECOND) OF TORTS § 674 cmt. e (1977). Further, they contend that, because the Auburn and Poland appeals were consolidated, and they prevailed on the Auburn appeal, the Morse group has failed to establish that it prevailed on the merits of this consolidated appeal.

[¶ 23] The parties do not dispute that the appeal of the Auburn decision had merit, so we need only address the Poland appeal. The consolidation of the Poland and Auburn appeals does not make the Poland appeal any more or less meritorious than it would have been if decided alone. Consolidated appeals do not restrict the court to an "all or nothing" review of the decisions from which the parties appeal. *See, e.g., State v. Bleyl,* 435 A.2d 1349, 1368 (Me.1981) (affirming some convictions and vacating others in consolidated appeal brought by three co-defendants).

[¶ 24] The Morse group submitted the affidavit of John Conway of the Poland Planning Board, who avers that "Mr. Rosenblatt said that his clients intended to litigate the project to its death." Susan Oram, who represented Morse Brothers in the proceedings, avers that Webster and Platz's attorney said to her, "See you next time," at the close of the hearing on the appeal, and that he stated to her with regard to another land use matter that if her other client did not meet his demands, "he would 'appeal and all that other good stuff just like I have been doing in the Platz case.'" Even assuming that this evidence would be admissible and not excluded as hearsay, these statements are inadequate to establish that the Poland appeal was "devoid of any reasonable factual support or any arguable basis in law." 14 M.R.S.A. § 556. Moreover, others' recollections of comments made by Webster and Platz's attorney do not speak to Webster's or Platz's intentions, especially in light of Platz's affidavit stating that his "intentions at all times have been to force Morse Brothers to comply with the applicable law."

[¶ 25] Although the Morse group contends that the trial court was in the best position to decide the special motion because it heard all the underlying appeals, the court's legal conclusion must be supported by pleadings and evidence that demonstrate clearly that the appeal was "devoid of any reasonable factual support or any arguable basis in law ...." *Id.; see Jenness v. Nickerson,* 637 A.2d 1152, 1154 (Me.1994) (a party seeking summary judgment "has the burden of demonstrating clearly that there is no genuine issue of fact") (quoting 2 FIELD, MCKUSICK & WROTH, MAINE CIVIL PRACTICE, § 56.4 at 39 (2d ed.1970)). As a matter of law, the Morse group's evidence does not meet the burden articulated in 14 M.R.S.A. § 556.

### 2. Appeal of the BEP Decision

[¶ 26] Webster and Platz contend that their appeal to the BEP was successful because it resulted in the imposition of

new conditions. According to them, the court's decision to deny Morse Brothers' motion to dismiss their appeal as frivolous contradicts the court's subsequent decision to deny the special motion to dismiss the present action. They contend that the court, in a footnote in its judgment, recognized that the appeal raised legitimate concerns when it stated that, because the DEP has required monitoring of the facility once it begins to operate, "the applicant will proceed with the project at its peril." In addition, Webster and Platz contend that some delays related to the DEP permit came about because Morse Brothers filed its own appeal of the BEP's decision.

[¶ 27] Although the court concluded in favor of Morse Brothers on the appeal, it also concluded in favor of Webster and Platz on the cross appeal. That the court reached its decision without difficulty cannot alone establish that the appeal lacked any factual or legal support. *See Donovan*, 740 N.E.2d at 643 ("The fact that the incidents were resolved in the plaintiffs' favor ... does not mean that there was no colorable basis for [the defendants'] petitions"). Moreover, the court denied Morse Brothers' motion to dismiss the BEP appeal as frivolous, and remarked on the legitimate concerns raised by the appeal. The court contradicts its earlier ruling that the appeal was not frivolous by concluding that Webster and Platz's "exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law ...." 14 M.R.S.A. § 556. The evidence presented is inadequate to establish that the Morse group met its burden of proof pursuant to 14 M.R.S.A. § 556.

### 3. Appeal of the Drive Entrance Permit

[¶ 28] Webster and Platz contend that, because the court dismissed their claim for lack of standing, the court never reached the merits of their appeal of the City of Auburn's decision to grant a drive entrance permit to Tim Morse. They contend that, if the court had determined that they had standing, it would have found merit in the question raised by their appeal: whether the permit required further review because the project is really a solid waste plant, not a truck terminal. Webster and Platz also contend that, because neither Morse Brothers nor MB Bagging was the applicant for the permit, neither may raise this appeal in their wrongful use of civil process complaint.

[¶ 29] The tort of wrongful use of civil proceedings lies where:

> (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought.

*Palmer Dev. Corp. v. Gordon*, 1999 ME 22, ¶ 4, 723 A.2d 881, 883 (quoting *Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 15, 708 A.2d 651, 656). Although we have not had the occasion to decide whether a dismissal for lack of standing constitutes a judgment in favor of the defendant, *see Pepperell*, ¶ 16, 708 A.2d at 656, we have held that "[a] successful statute of limitations defense does not reflect on the merits of an action." *Palmer*, ¶ 11, 723 A.2d at 884. Other state courts have determined that a dismissal granted on procedural grounds does not constitute a judgment terminating proceedings in favor of the successful defendant. *See, e.g., Rowen v. Holiday Pines Prop. Owners' Ass'n, Inc.*, 759 So.2d 13, 16 (Fla.Dist.Ct. App.2000) (dismissal for lack of subject matter jurisdiction is not a favorable termination because a court must first have jurisdiction over the action that it termi-

852

nates); *Sierra Club Found. v. Graham,* 72 Cal.App.4th 1135, 85 Cal.Rptr.2d 726, 734 (1999) (a favorable termination "reflect[s] on the merits of the action and the plaintiff's innocence of the misconduct alleged.... If resolution of the underlying action leaves a residue of doubt about the plaintiff's innocence or liability, it is not a favorable termination sufficient to support a cause of action for malicious prosecution").

[¶ 30] The court never addressed the merits of the appeal, and could not, therefore, determine whether the exercise of the right of petition "was devoid of any reasonable factual support or any arguable basis in law ...." 14 M.R.S.A. § 556. The dismissal of Webster and Platz's appeal of the decision to grant a drive entrance permit does not constitute a termination in favor of Tim Morse for which the Morse group may allege the wrongful use of civil proceedings. Even if the decision did constitute a termination in favor of Tim Morse, however, the court's seven page decision and order on the motion to dismiss establishes that there was a bona fide issue regarding whether Webster and Platz had standing to appeal the decision based on their claim that the drive would, de facto, be an impermissible accessory use like the one prohibited by the court's decision in the Auburn site plan appeal. Because the pleadings and evidence presented by the Morse group are, as a matter of law, inadequate to establish that the drive entrance appeal terminated in its favor, the same pleadings and evidence are also insufficient to meet the burden imposed by 14 M.R.S.A. § 556.

[¶ 31] The court committed legal error by concluding: (1) that the Poland site plan appeal lacked factual or legal support, (2) that the BEP appeal, which the court earlier found not to be frivolous, lacked any basis in fact or law, and (3) that the

Morse group met its burden in the drive entrance appeal when the allegations and evidence do not even support a prima facia case for wrongful use of civil proceedings because the Morse group failed to establish that the proceeding terminated in its favor.

[¶ 32] Because we have concluded that the Morse group's complaint should be dismissed pursuant to the anti-SLAPP statute, we need not address Webster and Platz's additional arguments that MB Bagging lacked standing to raise the three appeals to which it was not a party, that Morse Brothers lacked standing to raise Tim Morse's drive entrance appeal, and that the Morse group suffered no actual injury.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to dismiss.