JABAR, J.,
dissenting.
[¶ 22] I respectfully dissent for two reasons. First, the Court’s decision overstates the protection afforded to petitioning activity. The decision prevents what would otherwise be a meritorious case of defamation from proceeding in our courts. The Court states that Maine’s anti-SLAPP statute, 14 M.R.S. § 556 (2016), “create[s] a procedure for the prompt dismissal of lawsuits that challenge any actions that fall within that broad definition of petitioning activity.” Court’s Opinion ¶ 18 (emphasis added). This is not accurate; the statute was intended to protect petitioning activity from nonmeritoriou’s lawsuits—not from meritorious lawsuits. A person engaged in petitioning activity is not immune from a meritorious defamation action.
Eli 23] Second, we should broaden the definition of “actual injury” to include non-monetary or non-out-of-pocket- damages traditionally allowed in defamation cases.
I. MERITORIOUS CASES
[¶ 24] Our decisions have historically and consistently stated that the purpose of Maine’s anti-SLAPP statute is-to protect against meritless lawsuits filed with the purpose of discouraging participation in activities protected by the First Amendment, such as the right to petition the government. See Morse Bros., Inc. v. Webster, 2001 ME 70, ¶ 15, 772 A.2d 842 (stating that the special motion to dismiss “is a statutory creature designed to protect certain defendants from meritless litigation”). The critical .descriptive term—“merit-less”—or some synonym—e.g.,. “baseless”—appears in nearly‘every decision in *238 which we have addressed the statute.[6] The fact that anti-SLAPP statutes protect only against meritless or frivolous lawsuits is well established in scholarly writing.[7] As the Court notes in its decision, “because the SLAPP plaintiffs goal is not necessarily to win in the litigation, but, through the cost of litigation, to punish or deter petitioning activity, ‘defendants’ traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPPs.’ ” Court’s Opinion ¶ 6 (quoting Morse Bros., Inc., 2001 ME 70, ¶ 10, 772 A.2d 842). As we noted in Maietta Construction, Inc. v. Waimoright, “the anti-SLAPP statute is aimed at preventing litigation that has no chance of succeeding on the merits.” 2004 ME 53, ¶ 12, 847 A.2d 1169.
[¶25] Maine’s anti-SLAPP statute, like anti-SLAPP statutes from other states, has a single objective: to force lawsuits that are brought as a result of petitioning activity to face judicial scrutiny before discovery and litigation costs are incurred by the responding party. As the Court notes in its decision,
[t]he purpose of section 556 is to provide for expedited consideration of the nature of a plaintiff’s allegations—and a minimum amount of evidence supporting the veracity of those allegations—as early in the litigation as possible, before discovery or any other motion practice. In this way, a defendant burdened by a SLAPP case can seek early disposal of the litigation, before the substantial legal fees that are the true impetus behind SLAPP litigation can accrue.
Court’s Opinion ¶ 17 (citations omitted).
[¶ 26] The Court’s announcement today that Maine’s anti-SLAPP statute bars a claim for defamation that the plaintiff *239 would otherwise be entitled to pursue creates a pervasive immunity—in derogation of common law rights—for all activity undertaken within the broad category of petitioning activity. It marks an extraordinary departure from well-established jurisprudence construing the operation of section 556.
[¶ 27] If the Legislature had intended section 556 to establish such a wide-ranging immunity, the statute would simply provide that a defendant need only demonstrate that the actions cited in the complaint consisted of valid petitioning activities and that upon such demonstration the lawsuit must be dismissed. Instead, section 556 requires a showing of valid petitioning activity as the first step in the process. The second step—a showing that the defendant’s acts were “devoid of any reasonable factual support or any arguable basis in law” and “caused actual injury”—is directed to the plaintiffs complaint.[8] If the Legislature intended to create a presumptive, pervasive immunity based simply upon petitioning, as the Court posits, no subsequent steps beyond the first would be required.
II. ACTUAL INJURY
[¶ 28] In addition to overstating the protection afforded by Maine’s anti-SLAPP statute to any action, the Court’s definition of “actual injury” is too narrow. Although our jurisprudence has limited the definition of “actual injury” to out-of-pocket damages, see Camden Nat’l Bank v. Weintraub, 2016 ME 101, ¶¶ 12-14, 148 A.3d 788 (citing Schelling v. Lindell, 2008 ME 59, ¶ 17, 942 A.2d 1226), it is time to revisit and overrule those cases, because this narrow definition of “actual injury” prevents what would otherwise be a meritorious defamation case from proceeding in our courts. The common law of defamation allows for the recovery of damages without evidence of out-of-pocket expenses. In Gertz v. Robert Welch, Inc., the United States Supreme Court said:
We need not define ‘actual injury,’ as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.
418 U.S. 323, 349-50, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). We have enunciated similar rules regarding injuries in defamation cases. See Curtis v. Porter, 2001 ME 158, ¶ 19, 784 A.2d 18 (“We have long allowed recovery for mental anguish and loss of enjoyment of life in most tort actions.” (quotation marks omitted)); Rippett v. Bemis, 672 A.2d 82, 88 (Me. 1996) (stating that defamation damages “may include the elements of mental suffering, humiliation, embarrassment, effect on reputation and loss of social standing so far as they have been proved and may reasonably be. presumed”); Saunders v. VanPelt, 497 A.2d 1121, 1126 (Me. 1985).
[¶ 29] Requiring a litigant to prove out-of-pocket expenses to establish “actual injury” in a defamation case is in derogation of our common law. The enactment of a statute in derogation of common law is a profoundly significant step and we must *240 not presume that the Legislature has done so in the absence of a very clear statement of its intention to change existing common law. We reiterated our longstanding adherence to this rule in Batchelder v. Realty Resources Hospitality, LLC, where we explained that
we have long embraced the well-established rule of statutory construction that the common law is not to be changed by doubtful implication, be overturned except by clear and unambiguous language, and that a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or necessary implication.
2007 ME 17, ¶ 23, 914 A.2d 1116 (quotation marks omitted).
[¶ 30] Among the authorities cited for our statement in Batchelder was Maietta Construction, Inc., which confirmed the proposition that “[generally, Legislatures are deemed to draft legislation against the backdrop of the common law, and do not displace it without directly addressing the issue.” 2004 ME 53, ¶ 10, 847 A.2d 1169 (emphasis added). We also cited Ziegler v. American Maize-Products Co., where we noted that a “legislative pronouncement embodied in [a statute] alters common law only to the extent that the Legislature has made that purpose clear.” 658 A.2d 219, 223 (Me. 1995). By contrast, neither the legislative history[9] nor the plain language of section 556 evidence an intention to deprive Maine citizens of meritorious common law causes of action simply because the wrongdoer committed the wrong in the context of petitioning government. We have never so held in any of our cases construing section 556. For these reasons, we should broaden the definition of “actual injury” to its traditional definition as existing in our jurisprudence. Absent the Legislature’s clear intent to change the common law regarding damages in defamation cases, interpreting “actual injury” consistently with our previous anti-SLAPP cases denies Maine’s litigants access to the courts for what would otherwise be meritorious cases. By interpreting section 556 to require proof of a quantifiable sum of out-of-pocket damages, the Court has abrogated Maine’s common law definition of “injury” in defamation cases.
[¶ 31] Therefore, we must define “actual injury” as we have traditionally defined actual injury in defamation casés by not limiting the definition to out-of-pocket expenses. Because Desjardin established a prima facie case of emotional injury, which would be recoverable in a defamation claim as an “actual injury” without proof of out-of-pocket expenses, I would vacate the trial court’s grant of Reynolds’s special motion to dismiss and remand the case to Superior Court. Because I do not agree with the Court’s new evidentiary procedure, see Gaudette v. Davis, 2017 ME 86, ¶¶ 26, 34, 42-45, 160 A.3d 1190 (Jabar, J., dissenting), judgment should be entered against Reynolds on his special motion to dismiss and the case should be remanded to the Superior Court to proceed in the normal course.

. See Bradbury v. City of Eastport, 2013 ME 72, ¶ 9, 72 A.3d 512 (“The purpose of the anti-SLAPP statute and the special motion to dismiss is to provide a 'procedural mechanism to dispose of baseless lawsuits that are brought not to vindicate the plaintiff’s rights but to punish the defendant for exercising her constitutional right to petition the government. ...” (quotation marks omitted)); Nader v. Me. Democratic Party (Nader I), 2012 ME 57, ¶ 22, 41 A.3d 551 ("Despite the apparent purpose of the anti-SLAPP statute to dispose expeditiously of meritless lawsuits that may chill petitioning activity, the statutory language fails to track and implement such an objective. By protecting one party’s exercise of its right of petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party’s exercise of its right to petition, even when it is not engaged in sham petitioning.” (quotation marks omitted)); Schelling v. Lindell, 2008 ME 59, ¶ 6, 942 A.2d 1226 ("Title 14 M.R.S. § 556, known as Maine's anti-SLAPP statute ..., is designed to guard against meritless lawsuits brought with the intention of chilling or deterring the free exercise of the defendant’s First Amendment right to petition the government by threatening would-be activists with litigation costs.”); Morse Bros., Inc. v. Webster, 2001 ME 70, ¶ 10, 772 A.2d 842 (stating that the anti-SLAPP statute is designed to protect against meritless lawsuits filed to dissuade or punish a party’s exercise of its constitutional rights by imposing on it the delays and costs associated with litigation).

. See Steven J. Andre, Anti-SLAPP Confabulation and the Government Speech Doctrine, 44 Golden Gate U. L. Rev. 117, 119 (2014) ("The hallmark of a SLAPP suit is its lack of merit. Defendants prevail on the merits in over 77% of SLAPP suits. A SLAPP is brought with goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation, to weaken that defendant’s ability to engage in petitioning activity undesirable to the plaintiff, and to deter future activity.” (footnotes omitted) (quotation marks omitted)); John C. Barker, Common-Law and Statutory Solutions to the Problem of SLAPPS, 26 Loy. L.A. L. Rev. 395, 399 (1993) ("SLAPPs are by definition meritless suits.”); Leah McGowan Kelly, Election SLAPPS: Effective at Suppressing Political Participation and Giving Anti-SLAPP Statutes the Slip, 66 Me. L. Rev. 191, 192 (2013).

. I agree with the Court that “Reynolds has not challenged the Superior Court’s conclusion that Desjardins met his prima facie burden of establishing that at least one of Desjar-dins’s statements to the sheriff was devoid of any factual or legal support.” Court's Opinion ¶ 11. My disagreement with the Court’s decision is limited to the scope of the anti-SLAPP statute and the meaning of "actual injury” as that term of art is used in it.

. We have in the past recognized that the limited legislative history of section 556 constrains our interpretation of the statute. See Town of Madawaska v. Cayer, 2014 ME 121, ¶ 14, 103 A.3d 547 (noting that unlike other states’ anti-SLAPP statutes, "there is limited legislative history to shed light on the question of its scope”).