STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-0383

PATRICIA LEIGHTON,

      Plaintiff

      v.

MARC LOWENBERG, GREG LITUCHY and
BRIAN KANTOR & MARC G.
LOWENBERG, D.D.S., & GREG LITUCHY
D.D.S., P.C.

      Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER

REC'D CUMB CLERKS OFC
APR 15 '22 PM4:17

Before the Court are two motions, both by New York based defendants, Marc Lowenberg,

Greg Lituchy, and Brian Kantor, as well as their professional dental practice, "Marc G. Lowenberg

D.D.D. & Greg Lituchy D.D.S., P.C." (collectively "Defendants"). The two motions seek

dismissal of Leighton's complaint on alternative grounds. The first is a Special Motion to Dismiss

brought pursuant to Maine's law preventing strategic lawsuits against public participation ("anti-

SLAPP statute"). The second is a Motion to Dismiss brought pursuant to Maine Rule of Civil

Procedure ("M.R. Civ. P.") 12(b)(6). For the reasons set forth herein, the Defendants Special

Motion to Dismiss is DENIED. The Defendants' Motion to Dismiss is GRANTED.

**FACTUAL BACKGROUND**

1

The following facts are derived from a review of the complaint, the special motion to dismiss, the opposition, and the various accompanying affidavits. *See Nader v. Me. Democratic Party*, 2013 ME 51, ¶ 2, 66 A.3d 571.

The current lawsuit brought by Plaintiff Patricia Leighton ("Leighton") is the latest in a long line of court battles between herself and the Defendants. The five lawsuits that have been filed by the parties, across two jurisdictions, can be traced to one particular series of events occurring in 2006.

In June of 2006, Leighton was scheduled to receive extensive dental treatment from the Defendants at their dental practice. The treatment to be received was part of a coordinated effort between the Defendants and the Today Show, a daily television program on NBC network, to offer low cost dental care to a patient in significant need. Leighton, a woman of limited means and a breast cancer survivor, was selected to be that patient.

On June 19th 2006, Leighton and Defendant Lituchy appeared on the Today Show as part of a segment titled "getting the perfect smile" which was intended to promote Leighton, her story, and the care Lituchy provided, or was providing, to her. As of the June 19th interview, much of the planned treatment had not been provided to Leighton — only three of the fourteen implants had been placed. No further dental work was performed on Leighton after her and Lituchy's appearance on the Today Show. Ultimately, the implants that Lituchy did provide to Leighton failed and, as of the date this lawsuit was filed, Leighton had just five upper teeth.

A video of the Today Show segment was later posted to the Defendants website and, in 2007, Leighton wrote a letter to the Defendants requesting that the video and other pieces of personal information about her be removed from their webpage. The Defendants refused to comply with Leighton's request and, in 2008, Leighton filed suit against them in New York,

2

alleging, *inter alia*, dental malpractice by the Defendants for their failure to provide proper care to Leighton. In 2017, Leighton's malpractice action went to trial, and, after a month, a mistrial was declared. Leighton's malpractice action remains pending in New York state court.

Before the 2017 trial, Leighton sent letters to various New York City dentists inviting them to come and watch the trial. In those letters, Leighton made a number of claims about the Defendants treatment of her and highlighted some of the conduct she felt was especially egregious.

In August of 2018, Leighton brought suit seeking an injunction preventing the Defendants from posting her picture and personal information on their website. In October of 2018, Defendants Lituchy and Lowenberg brought suit in New York State Court alleging that the letters Leighton sent to other New York City dentists were defamatory and requesting six million dollars in damages.

In early 2019, Leighton's request for injunctive relief in New York was denied and her lawsuit was dismissed on statute of limitations grounds. In May of 2019, soon after Leighton's suit was dismissed, Defendants Lowenberg and Lituchy willfully dismissed their defamation claims in New York.

In April of 2019 however, prior to their voluntary dismissal in New York, the Defendants filed an identical suit in Maine. In that suit, the Defendants alleged three counts: (I) Libel *per se*; (II) Libel; and (III) Tortious Interference with a Business Relationship. The Defendants again sought six million dollars in damages. Leighton properly responded to the Maine complaint and began to defend the suit — submitting discovery requests and interrogatories to Lituchy, Lowenberg and Kantor. After a systematic failure to properly respond to Leighton's requests, and a failure to comply with a discovery order, the Maine Superior Court (*Stewart, J.*), dismissed

3

the Defendants defamation complaint with prejudice. *See Lowenberg D.D.S. & Lituchy D.D.S. P.C. et. al. v. Leighton*, Order on Motion for Sanctions, Docket No. CV-19-137 (Oct. 26th, 2020).

On October 25th, 2021, Leighton filed the instant four count complaint in Cumberland County Superior Court. Count I alleges wrongful use of civil proceedings,[1] Count II alleges abuse of process, Count III raises an invasion of privacy claim, and Count IV notice pleads punitive damages. On December 2nd, the Defendants filed the pending motions seeking dismissal. Both motions, fully briefed, await this Court's decision.

## DISCUSSION

The Defendants seek dismissal of Leighton's four count complaint via two separate procedural vehicles. First, they seek to invoke 14 M.R.S. § 556's prohibition of lawsuits brought to punish individuals for participating in lawful petitioning activity. Second, they seek to dismiss Leighton's complaint by way of M.R. Civ. P. 12(b)(6). Counts I and II of Leighton's complaint, and their ultimate dismissal, are addressed below.[2]

### I. 14 M.R.S. § 556 Special Motion to Dismiss ("anti-SLAPP")

#### A. Current State of anti-SLAPP Jurisprudence

Before addressing whether Leighton's claims survive the Defendants anti-SLAPP Motion, the Court first pauses to identify the current state of anti-SLAPP jurisprudence in Maine. With Chief Justice Stanfill recently commenting on the "tortured evolution of [the Law Court's]

---

[1] Count I actually alleges malicious prosecution. However, malicious prosecution is the criminal counterpart to wrongful use of civil proceedings. *See Pepperell Trust Co. v. Mountain Heir Fin Corp.*, 1998 ME 46, ¶ 1, 708 A.2d 651 (stating that malicious prosecution in the civil context is more properly labeled wrongful use of civil proceedings). The Court thus refers to Count I as such throughout this Order.
[2] Count III of Leighton's complaint was voluntarily dismissed by her in her opposition to the special motion. Count IV, seeking punitive damages is dismissed as a result of this Order since there remains no underlying tort which serves as a basis for a punitive damage award. See *Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 19 n.3, 226 A.3d 227

4

anti-SLAPP jurisprudence" and characterizing it as having "taken several wrong turns," it is imperative that this order, and future ones issued by this Court, fully — and clearly — set forth anti-SLAPP law. *Weinstein v. Old Orchard Beach Family Dentistry, LLC, et. al.*, 2022 ME 16, ¶ 52, --- A.3d --- (*Stanfill, C.J.* Dubitante); *see also Thurlow v. Nelson*, 2021 ME 58, ¶ 16, 263 A.3d 494 (summarizing the evolution of Maine's anti-SLAPP jurisprudence.) As the Court charged with following the Law Court's guidance, clarity — not more confusion — is paramount.

A Strategic Lawsuit Against Public Participation ("SLAPP") is a lawsuit filed with the goal of stopping "citizens from exercising their political rights or to punish them for having done so." *Thurlow*, 2021 ME 58, ¶ 8, 263 A.3d 494 (quoting George W. Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Env't L. Rev. 3, 5-6 (1989)). To prevent usage of the courts to infringe upon an individual's right to petition, many states have passed anti-SLAPP statutes, Maine's is found at 14 M.R.S. § 556:

> When a moving party asserts that the civil claims . . . against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss . . . The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556 (2021). This statutory framework for deciding special motions to dismiss results in a two step analysis that was adopted by the Law Court in *Morse Bros. v. Webster*, 2001 ME 70, ¶ 19, 772 A.2d 842, refined in *Nader v. Me. Democratic Party*, 2012 ME 57, ¶¶ 31-33, 41 A.3d 551, and refashioned in *Thurlow*, 2021 ME 58, ¶ 19, 263 A.3d 494.

The first step, a question of law, requires the trial court to "determine whether the claims against the moving party are based on the moving party's exercise of the right to petition pursuant to the federal or state constitutions." *Thurlow*, 2021 ME 58, ¶ 12, 263 A.3d 494. If the defendant/moving party establishes that the claims are premised on their petitioning activity, then the second step requires the non-moving party (usually the plaintiff) to set forth a prima facie case that the "moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party." *Id.* ¶¶ 12-13. A prima facie standard is a low one that requires proof of only enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor. *Id.* ¶ 13 (quoting *Nader I*, 2012 ME 57 ¶ 34, 41 .3d 551.) It does not depend on the reliability or credibility of the evidence. *Id.* Although not considered a third step in the anti-SLAPP framework, the requirement of showing actual injury is an important one. *See Weinstein*, 2022 ME 16, ¶ 5, --- A.3d --- ("The Plaintiff's failure to meet either portion of their prima facie burden requires that the Court grant the special motion to dismiss with no further procedure.")

With this two step framework in mind, and guided by the Law Court's very recent decision in *Weinstein*, this court cautiously embarks on an analysis of the Defendants' special motion. Consistent with the Law Court's jurisprudence on the topic, the Court severs the framework into three components: (1) Petitioning Activity; (2) Prima Facie Case that Petitioning Activity was Devoid of Reasonable Basis in Law and Fact; (3) Actual Injury. [34]

---

[3] In her opposition to the Defendants' special motion, Leighton raises policy-based concerns regarding the application of the anti-SLAPP statute to malicious prosecution or abuse of process claims. Specifically, she argues that in cases like this one, such application may allow for the wealthy and powerful to wield the proverbial anti-SLAPP "sword" against more vulnerable individuals who have meritorious claims. This argument is unavailing. Although Maine's anti-SLAPP jurisprudence can be perplexing, there are specific requirements which allow any plaintiff — vulnerable or not — to litigate their claims. The two-step analytical framework does not have a disproportionate effect on a plaintiff like Leighton.

[4] Leighton also claims that a malicious prosecution or wrongful use of civil proceedings claim and the anti-SLAPP statute are inapposite. Specifically, they maintain that the elements of a wrongful use claim are similar to the anti-

6

## B. Anti-SLAPP Analysis

### 1. Petitioning Activity

In the first step of an anti-SLAPP analysis the burden is on the moving party, the Defendants here, to establish that Leighton's lawsuit was brought because of their exercise of their right of petition. Both claims of Leighton's complaint (I) malicious prosecution and (II) abuse of process, center on the filing and litigating of lawsuits in both Maine and New York. As long as such filing constitutes the "petitioning activity" envisioned by 14 M.R.S. § 556, then the first step is satisfied.

Guided by 14 M.R.S. § 556's expansive definition of the term "a party's exercise of its right of petition,"[5] this Court finds that the Defendants have shown that Leighton's current lawsuit is based on their submission of "written statement(s) . . . to a judicial body," satisfying the first step in the anti-SLAPP analysis.

### 2. Prima Facie Case That Petitioning Activity was Devoid of Reasonable Basis in Law and Fact

---

SLAPP steps. *See Pepperell Trust Co. v. Mountain Heir Fin Corp.*, 1998 ME 46, ¶ 15, 708 A.2d 651 (stating elements of wrongful use claim as (1) a showing that the defendants initiated, continued or procured civil proceedings without probable cause; (2) the purpose of the civil proceedings was other than that of securing the proper adjudication of the claim upon which the proceeding was based; and (3) those proceedings terminated in favor of the plaintiff). Thus, according to Leighton, filing a complaint for wrongful use of civil proceedings (a) requires her to carry the Defendants' initial burden of establishing that the suit was brought based on the Defendants' exercise of their right of petition; and (b) imposes a heightened pleading requirement.

While it is true that the elements of a claim for wrongful use and the steps of the anti-SLAPP framework overlap, such similarity does not void the anti-SLAPP statute's application to wrongful use claims *ab initio*. Given the broad statutory definition of "petitioning activity," it is likely that all wrongful use claims will involve some form of petitioning activity. Additionally, while the Defendant claims that the anti-SLAPP statutes application here creates a heightened pleading requirement, this is not true in all cases. Challenging the sufficiency of a complaint with a special motion to dismiss is a discretionary choice that may be made by a defendant. If such a challenge is made, then the plaintiff may either rest on her complaint, amend her complaint, or submit an affidavit which further specifies the allegations made. Thus, an anti-SLAPP challenge to a complaint charging wrongful use of civil proceedings is appropriate.

[5] As used in this section, "a party's exercise of its right of petition" means any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government. 14 M.R.S. § 556 (2021).

7

In the oft-maligned and historically malleable second step of the anti-SLAPP framework, the burden shifts from the moving party (carrying the burden for establishing that the lawsuit is based on an exercise of their "right of petition") to the non-moving party — the Plaintiff here, to establish that the "moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law . . . ." *Thurlow*, 2021 ME 58, ¶ 12, 263 A.3d 494.[6] Here, the non-moving party carries a prima facie burden which is a low standard that requires "only *some* evidence on every element of proof necessary to obtain the desired remedy." *Id.* ¶ 13. (emphasis added).

In this case, the framework's second step requires Leighton to set forth prima facie evidence that the defamation complaint filed by the Defendants in either New York's trial court or Maine's Superior Court was devoid of any reasonable basis in fact or arguable basis in law. Put simply, Leighton must set forth prima facie evidence that the claims she made in her letters sent to other dentists were true. She has made such a showing here. Each of the claims recited in the letter does have at least prima facie support in the record.

The defamation complaints center primarily on the letters sent by Leighton to New York City dentists in the weeks preceding the New York based malpractice trial. Those letters, which were attached to the Defendants' special motion as exhibits, make a myriad of claims about the dental care provided to Leighton by the Defendants.[7]

---

[6] As set forth *supra* at 6, the latter portion of the second step in the analysis is addressed in its own section below.
[7] While not an exhaustive list, some letters that Leighton sent regarding the trial prominently state the following three claims:
- "The medical authorization from the Doctor of this medically compromised patient was DENIED, yet this information was withheld from the patient and the dentists proceeded with the treatment anyway as a TV crew was scheduled to film it."
- "The treatment was left dramatically incomplete and the dentists invented an appointment where they claim treatment was performed. Yet documents and photographic evidence place the patient elsewhere at that same time."

In an extensive and thorough affidavit attached to Leighton's opposition to the special motion is her entire theory of her original malpractice case. In this affidavit, Leighton walks through nearly every claim she makes in those letters and provides citations to either deposition testimony, cell phone records, car service records, dental records, medical records, photographs or video that sufficiently serves as "some evidence" of every element of the claims she makes in her various letters. Accordingly, Leighton has established a prima facie case that the Defendants' petitioning activity, namely their filing of a lawsuit which includes claims of libel, libel *per se*, and tortious interference with a business relationship, were devoid of any reasonable basis in fact or in law.

### 3. Actual Injury

The second half of the anti-SLAPP framework's second step requires the non-moving party to show that the "moving party's acts caused actual injury to the responding party." *Thurlow*, 2021 ME 58, ¶ 12, 263 A.3d 494. "Actual injury means a reasonably certain monetary valuation of the injury suffered by the Plaintiff." *Weinstein*, 2022 ME 16, ¶ 7, --- A.3d ---. "Actual injury could include . . . quantifiable losses of money or other resources or identifiable special damages." *Id.*

"Complaints challenged by the anti-SLAPP special motion to dismiss differ from other civil complaints because a complaint's notice pleading may be insufficient in the face of a special motion to dismiss." *Id.* ¶ 9. While, by nature, a notice pleading is traditionally forgiving, the "special motion to dismiss procedure in anti-SLAPP matters is . . . a more precise mechanism" for which notice pleading is insufficient. *Id.* ¶ 10 (quoting *Desjardins v. Reynolds*,

---

- "The defendants have repeatedly lied and lined up their staff to lie in a coordinated cover up, all of which is disproved by irrefutable documentary evidence. The trial promises countless acts of perjured testimony"

Other, more detailed letters talk about the effect of the Defendants alleged negligent treatment on Leighton's personal life and further rebutted what she anticipated would be the Defendants' case at trial.

2017 ME 99, ¶ 17, 162 A.3d 228). Such precision is mandated by the anti-SLAPP statute itself, which requires the opponent of a special motion to dismiss to show "that the moving party's acts caused actual injury to [her]." *Id.*

Although a Plaintiff may not always be able to foresee a challenge by way of special motion, the plaintiff may later amend his or her complaint to allege actual injury with greater specificity and may bolster any allegations of actual injury through his or her affidavit. *Id.* The existence of actual injury may be considered only to the extent that the asserted injury was both alleged in the complaint and established on a prima facie basis in opposition to the special motion to dismiss. *Id.* ¶ 8

To begin the actual injury analysis, the Court first looks at Leighton's complaint to determine if she has alleged actual injury within the complaining document sufficient to establish actual injury for anti-SLAPP purposes. She has not. In her complaint, Leighton has simply notice plead potential damages — asking for compensatory, exemplary and punitive damages.

In Count I, Leighton claims that the Defendants' conduct has caused her "severe distress, mental anguish, emotional harm, and substantial monetary expense." She also alleges that the Defendants' activity has caused her "reputational injury, economic harm and special damages including . . . the cost of defense, expenses, and expenditure of resources reasonably related to successfully defending against knowingly baseless claims." In Count II, Leighton claims that the Defendants' abuse of process has caused her damages in the form of "substantial attorneys fees defending a meritless lawsuit." In Count IV, she pleads punitive damages. Each of these are notice pleadings with respect to the damages portion of Leighton's counts. *See Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 16, 19 A.3d 823 (referencing M.R. Civ. P. 8(a)(1)). In the ordinary case, such short and plain statements of the damages requested by a

10

plaintiff would be fine. Under the more stringent anti-SLAPP standard however, they do not pass muster.

Next, since Leighton did not file an amended complaint further specifying the extent of her damages suffered, the Court must carefully comb through Leighton's detailed and thorough affidavit to see if it bolsters or expands upon the injuries Leighton set forth in her complaint. With respect to her injuries stemming from the defamation complaints filed by the Defendants, it does.

While her affidavit is rife with allegations of injury resulting from her dental malpractice claims, such detail is a red herring. That evidence helps Leighton meet the former element of the second step, not the ladder. The essential inquiry here is whether Leighton has established a prima facie case of actual injury resulting from the Defendants filing of their defamation lawsuit. Here, one paragraph in her affidavit saves her complaint.

In paragraph seven of Leighton's affidavit filed with her opposition to the Defendants' Special Motion, Leighton sets forth a definite amount of damages resulting from her defense of the Defendants' Maine based defamation lawsuit. She alleges that the firm she hired to represent her in the complaint "charg[ed] her $39,261.17 in legal costs and fees." *See Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶ 10, 847 A.2d 1169 ("the record must contain evidence from which damage in a definite amount may be determined with reasonable certainty.") This one sentence establishes a prima facie case of actual injury sufficient to survive the Defendants' special motion. In her complaint, she alleges damages incurred in the form of substantial legal costs, and in her affidavit, she allows this court to avoid "guess or conjecture." *Weinstein*, 2022 ME 16 ¶ 8, --- A.3d ---.

## C. Conclusion

Since Leighton satisfies all components of the anti-SLAPP analytical framework, the Defendants' special motion is denied.

## II.   12(b)(6) Motion to Dismiss

Alternative to their special motion, the Defendants' seek dismissal of Leighton's claim utilizing M.R. Civ. P. 12(b)(6) as their procedural vehicle. Each count of Leighton's complaint, as adjudged against Rule 12(b)(6), is addressed in turn.

### A. Motion to Dismiss Standard

"A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the claim." *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166 (quoting *New Orleans Tanker Corp, v. Dep't of Transp.*, 1999 ME 67, ¶ 3, 728 A.2d 673). When the court reviews a motion to dismiss, "the claim is examined 'in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 11, 155 A.3d 426. Allegations in the complaint are deemed true for the purposes of deciding a motion to dismiss. *Id.* "A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)) (internal quotations omitted).

### B. Count I: Wrongful Use of Civil Proceedings

To survive a motion to dismiss, a plaintiff who brings a wrongful use of civil proceedings claim must show that the defendant (1) initiated, continued, or procured civil proceedings without probable cause; (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which proceedings are based; and (3) the proceedings have

terminated in favor of the person against whom they are brought. *Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 15, 708 A.2d 651. The favorable termination of the underlying proceeding must be on the merits, or, in some way, reflect on the merits in order to have a claim for wrongful use of civil proceedings. *Palmer Development Corp. v. Gordon*, 1999 ME 22, ¶ 10, 723 A.2d 881 (1999).

Here, the Court finds that Leighton's complaint sufficiently sets forth the first two elements of a wrongful use of civil proceedings claim. It is the third where she runs into trouble. In order for Leighton to survive the Defendants' Motion, she needs to show that dismissal of a lawsuit as a discovery sanction is either an adjudication on the merits, or is, in some way, reflective of the merits of the Defendants' defamation suit. Even viewed in a light most favorable to Leighton, she cannot make this showing.

The very rationale behind allowing dismissal as a sanction for serious discovery violations forecloses any opportunity for Leighton to state a claim. The Law Court has, on multiple occasions, reiterated that when "dismissal or default" are imposed as a sanction for repeated discovery violations, it implicates "constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action *without* affording a party the opportunity for a hearing on the merits of his cause." *Ireland v. Galen*, 401 A.2d 1002, 1004 (Me. 1979) (emphasis added); *see also Fallon v. Casco-Northern Corp.*, 462 A.2d 53, 56 (Me. 1983); *St. Paul Ins. Co. v. Hayes*, 2001 ME 71 ¶ 7, 770 A.2d 611; *cf. Green Tree Servicing LLC v. Cope*, 2017 ME 69, ¶ 18, 158 A.3d 931.

Accordingly, any wrongful use of civil proceedings claim may not be premised on the dismissal of Leighton's lawsuit filed in Maine. Additionally, no such action may be based on the

13

dismissal of the Defendants' defamation complaint filed in New York. There, the Defendants' voluntarily dismissed their complaint.

### C. Count II: Abuse of Process

To state a cognizable claim for abuse of process, a plaintiff must plead facts which establish: (1) the use of process in a manner improper in the regular conduct of the proceeding; and (2) the existence of an ulterior motive. "In contrast to a claim of wrongful use of civil proceedings which lies where there is no basis for an entire claim, abuse of process "covers the allegedly improper use of individual legal procedures after a suit has been filed properly." *Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 16 n.8, 708 A.2d 651. "Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment." *Id.*

Here, Leighton cannot state a claim for abuse of process. Even if all the facts which Leighton plead in her verified complaint may be established as true, she cannot prove that the defendants acted affirmatively to misuse standard litigation procedures. Failure to provide discovery does not equate to tortious misuse of the discovery process.

## III. Conclusion

Although the Plaintiff's four count complaint survives the Defendants' special motion to dismiss, it does not survive their 12(b)(6) motion. Even viewed in a light most favorable to Leighton, her complaint does not entitle her to relief pursuant to any legal theory.

**Entry is:**

Defendants' Special Motion to Dismiss is Denied.

Defendants' Motion to Dismiss is Granted.

The clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

Dated: 4/15/22

John O'Neil Jr.
Justice, Maine Superior Court.

Entered on the Docket: 4/15/2022

15