MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2014 ME 121
Docket:        Aro-14-51
Submitted
 On Briefs:    September 23, 2014
Decided        November 4, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, JABAR, and HJELM, JJ.

# TOWN OF MADAWASKA

v.

# RICHARD CAYER et al.

ALEXANDER, J.

[¶1]  Richard and Ann Cayer appeal from an order entered by the Superior Court (Aroostook County, *Cuddy, J.*) denying as untimely their special motion to dismiss filed pursuant to Maine's anti-SLAPP[1] statute, 14 M.R.S. § 556 (2013). The pleading that the Cayers seek to dismiss is an amended land use citation and complaint, *see* M.R. Civ. P. 80K(b)(1)(A), filed against the Cayers by the Town of Madawaska for violations of a shoreland zoning ordinance.  The Cayers maintain that the land use citation was a retaliatory effort by the Town to punish them for exercise of their right to petition local government, and that the special motion to dismiss was timely in relation to the Town's amended complaint.  In the alternative, they argue that the court abused its discretion by refusing to allow them

---

[1]  Strategic Lawsuit Against Public Participation

to file the motion to dismiss after the sixty-day statutory time period following filing of the Town's pleading. *See* 14 M.R.S. § 556.

[¶2]    Since its enactment by P.L. 1995, ch. 413, § 1 (effective Sept. 29, 1995), Maine's anti-SLAPP statute has provided a mechanism for the disposal of baseless claims brought to punish or deter a petitioning party from exercising its constitutional right to petition the government. *See Nader v. Me. Democratic Party* (*Nader II*)*,* 2013 ME 51, ¶ 12 n.8, 66 A.3d 571. This is not such a case. Based upon the plain language of the statute and its limited scope of application, we conclude that the anti-SLAPP statute cannot, in ordinary circumstances such as those presented here, be invoked to thwart a local government enforcement action commenced to address the defendants' alleged violations of law. Because the trial court reached the correct result in denying the special motion to dismiss in the context of this land use enforcement action, we affirm, albeit for a different reason.

## I.  CASE HISTORY

[¶3]  On June 3, 2010, the Code Enforcement Officer (CEO) for the Town of Madawaska inspected the Cayers' property and discovered that two travel trailers had been added to a lot where one mobile home was already located. As the Cayers had not submitted an application to the Town to allow the additional trailers, the CEO issued a notice of violation alerting them to their possible

violation of section 15(A)(5) of the Madawaska Shoreland Zoning Ordinance.[2] After a June 29 hearing before the Town Board of Selectmen, during which the Board members heard testimony from the Cayers and the CEO, the Board found the Cayers in violation of the ordinance and directed them to remove the one remaining trailer by July 2010, pay a civil penalty, and enter into the recommended resolution through a signed consent agreement. The Cayers did not appeal the Board's June 2010 decision to the Superior Court pursuant to M.R. Civ. P. 80B.

[¶4] As of August 2010, the Cayers had not paid the assessed civil penalty or signed a consent agreement. On August 10, the Town filed a land use citation and complaint in District Court pursuant to 30-A M.R.S. § 4452 (2013) and M.R. Civ. P. 80K. The Cayers timely requested removal to the Superior Court for a jury trial pursuant to M.R. Civ. P. 38.

[¶5] Two years then passed without significant progress on the case, until November 14, 2012, when the Town filed a motion to amend its complaint. The

---

[2] Section 15(A)(5) of the Madawaska Shoreland Zoning Ordinance provides, in relevant part:

> **15. Land Use Standards.** All land use activities within the shoreland zone shall conform with the following provisions, if applicable.
>
> **A. Minimum Lot Standards**
>
> . . . .
>
> (5) If more than one residential dwelling unit, principal governmental, institutional, commercial or industrial structure or use, or combination thereof, is constructed or established on a single parcel, all dimensional requirements shall be met for each additional dwelling unit, principal structure, or use.

amended complaint alleged an additional violation of section 15(D)(1) of the ordinance, but alleged no additional facts.[3] On January 24, 2013, the court granted the Town's motion pursuant to M.R. Civ. P. 15(a) to amend the pleading.

[¶6] On March 25, 2013, the Cayers filed a special motion to dismiss the amended complaint pursuant to the anti-SLAPP statute, 14 M.R.S. § 556, alleging that the Town's complaint was a meritless lawsuit brought for the purpose of punishing or deterring the Cayers' First Amendment right to petition local government. In support of this allegation, the Cayers submitted an affidavit recounting a twenty-plus-year history of disputes with the Town, its Board of Selectmen, and its CEO.[4]

---

[3] Section 15(D)(1) of the ordinance provides, in pertinent part:

. . . .

**D. Campgrounds.** Campgrounds shall conform to the minimum requirements imposed under State licensing procedures and the following:

(1) Campgrounds shall contain a minimum of five thousand (5,000) square feet of land, not including roads and driveways, for each site. Land supporting wetland vegetation, and land below the normal high-water line of a water body shall not be included in calculating land area per site. … .

[4] Specifically, Richard Cayer recounted a list of disputes involving neighboring landowners and the Town dating back to 1993, several of which Cayer litigated before the Superior Court and the Law Court. In 2005, Cayer filed a Rule 80B appeal of the Town's grant of a land use permit to neighboring property owners, and was successful on this appeal as well as a later challenge to a consent agreement between the Town and neighbors. Most recently, in 2009, Cayer filed an unsuccessful motion for contempt against the Town pursuant to M.R. Civ. P. 66(d) for an alleged failure to comply with court orders to conduct further hearings on the contested permit. This case came before the Law Court in December 2009, and we affirmed the Superior Court's judgment. *See Cayer v. Town of Madawaska*, 2009 ME 122, 984 A.2d 207. Cayer also cites a 2007 case in which neighboring landowners appealed the Town's issuance of two permits to the Cayers to build a boat landing and new deck, and which ultimately resulted in issuance of the permits.

[¶7]  Although the Cayers filed the special motion to dismiss 131 days after the Town filed its motion to amend, they did not request leave from the court to file the motion beyond the anti-SLAPP statute's sixty-day time limitation.  The court denied the special motion to dismiss by an order entered January 7, 2014, concluding that the Cayers' motion was filed outside the time limitation.[5]  The court further concluded that there was no basis in the record to allow filing of the motion outside the sixty-day time period.  The Cayers timely appealed.

## II.  LEGAL ANALYSIS

[¶8]  The anti-SLAPP statute, 14 M.R.S. § 556, allows a defendant to file a special motion to dismiss a lawsuit or claim that is brought "with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government."  *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226.  Although ordinarily the trial court must issue a final judgment in order for an appeal to be cognizable, we allow interlocutory appeals from denials of special motions to dismiss brought pursuant to the anti-SLAPP statute.  *Nader II*, 2013 ME

---

[5]  Citing *Bradbury v. City of Eastport*, 2013 ME 72, ¶ 11 n.3, 72 A.3d 512, the court determined that the statutory limitation period runs from the date of service of the challenged pleading. Because the Town's amended complaint included no additional facts, the court further concluded that the amended complaint "related back" to the original pleading with a date of service of August 13, 2010, pursuant to M.R. Civ. P. 15(c)(2).  By this reasoning, the Cayers' special motion to dismiss was filed over a year and a half outside of the time limitation.

51, ¶ 12, 66 A.3d 571. Review of a trial court's ruling on a special motion to dismiss is de novo. *Id.*

[¶9]   We have adopted a two-step analysis that courts must follow to determine whether a special motion to dismiss should be granted. *Nader v. Me. Democratic Party* (*Nader I*), 2012 ME 57, ¶ 15, 41 A.3d 551.  The first step requires the court to determine whether the moving party has demonstrated that the nonmoving party's claim is "based on the moving party's exercise of the . . . right of petition under the Constitution of the United States or the Constitution of Maine."  14 M.R.S. § 556; *Nader II*, 2013 ME 51, ¶ 13, 66 A.3d 571; *Nader I*, 2012 ME 57, ¶ 15, 41 A.3d 551.  If the moving party makes this initial showing, the burden then shifts to the nonmoving party, and under the second step the court must dismiss the nonmoving party's lawsuit or claim unless the nonmoving party makes a prima facie showing that at least one of the moving party's petitioning activities was "devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury to the [nonmoving party]." *Nader II*, 2013 ME 51, ¶ 14, 66 A.3d 571.  We address only the first step.

[¶10]  The statute broadly defines "a party's exercise of its right of petition" to include

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an

issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556; *see also Schelling,* 2008 ME 59, ¶ 11, 942 A.2d 1226.

[¶11]   The Cayers contend that this language authorizes individuals to invoke the anti-SLAPP laws to obtain dismissal of State or local actions seeking to enforce laws with which the individuals disagree or do not wish to comply—particularly when, as here, the individuals have had prior disagreements with the State or local government seeking to enforce the law.  Nothing in the anti-SLAPP statute or its history expresses or even implies that it would protect the Cayers from the Town's efforts to enforce an ordinance limiting the number of trailers that they are permitted to maintain on their land.

[¶12]  Although the statute is silent with regard to how a moving party must show that the opponent's claim is "based on" this right of petition, we have implicitly accepted the approach that the moving party must show that the claims at issue are "based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Nader I,* 2012 ME 57, ¶ 22, n.9, 41 A.3d 551 (citing *Duracraft Corp. v. Holmes Products Corp.*, 691 N.E.2d

935, 943 (Mass. 1998)). This limitation on the applicability of the anti-SLAPP law has been discussed mainly in the context of the statute's constitutional implications, which require balancing of the moving party's right to petition with the nonmoving party's right of access to the courts. *See Nader I*, 2012 ME 57, ¶ 22, n.9, 41 A.3d 551. The reasoning, however, is also applicable to the present issue: whether a government enforcement action can be defended or barred by the filing of an anti-SLAPP motion to dismiss the action.

[¶13] Recent precedent suggests that an anti-SLAPP motion is appropriate when the plaintiff's lawsuit or claim is a retaliatory effort based solely on the moving party's petitioning conduct.[6] *See Bradbury v. City of Eastport*, 2013 ME 72, ¶ 16, 72 A.3d 512 (noting that counterclaims for tortious interference with a contract and slander explicitly stated that they were based on the filing of the plaintiff's complaint); *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶¶ 7, 19, 772 A.2d 842 (stating that parties did not contest that the claims were based on moving parties' exercise of their constitutional rights to challenge permits and licensing). The case before us arises from efforts of defendants in a local enforcement action to thwart such enforcement through the use of the anti-SLAPP

---

[6] Accordingly, SLAPP lawsuits have most often taken the form of ordinary tort claims, including defamation, business torts, conspiracy, constitutional-civil rights violations, and nuisance claims. *See generally* George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Evtl. L. Rev. 3, 9 (1989) (testimony of Rep. Richardson, submitted to Joint Comm. on the Judiciary, L.D. 781 at 7 (117th Legis. 1995)).

special motion to dismiss. Although zoning disputes make up many of the classic anti-SLAPP cases, the context for such cases has generally occurred when citizens who publically oppose development projects are sued by companies or other citizens, rather than by a government entity alleging violation of a land use ordinance. *See, e.g.*, *Morse Bros.*, 2001 ME 70, ¶ 19, 772 A.2d 842.

[¶14] Unlike statutes in some other states, Maine's anti-SLAPP statute does not expressly exempt government enforcement actions from its application.[7] Further, there is limited legislative history to shed light on the question of its scope.[8] However, the plain meaning of the statutory language requiring that the original claim at issue be "based on" the defendant's First Amendment right to

---

[7] The California and Texas anti-SLAPP statutes expressly exempt government enforcement actions brought in the name of the state. *See* Cal. Civ. Code § 425.16(d) (West 2011); Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a) (West 2013). Exactly which civil actions by cities and towns are exempt appears to be a developing question of law, but some California state appellate courts have extended this exemption to include at least "all civil actions brought by state and local agencies to enforce laws aimed at consumer and/or public protection." *City of Long Beach v. California Citizens for Neighborhood Empowerment*, 3 Cal.Rptr.3d 473, 478 (Cal. Ct. App. 2003). *But see City of Los Angeles v. Animal Def. League*, 37 Cal.Rptr.3d 632, 642 (Cal. Ct. App. 2006) (refusing to extend exemption for City's workplace violence petition, stating that "only actions brought by a governmental agency to enforce laws aimed generally at public protection qualify for this exemption to anti-SLAPP scrutiny").

[8] The enacting bill's brief statement of fact does indicate, however, that the Legislature intended for a special motion to dismiss to apply to those claims or counterclaims filed for retributory or otherwise frivolous reasons:

> This bill allows a person exercising the first amendment right to bring an action and if a counterclaim is filed against that person for apparently dilatory expense incurring reasons or other frivolous reasons for seeking redress and accord, then that person has a right to a motion to dismiss and have that motion advanced so that the motion can be heard as soon as possible and if the motion to dismiss is granted, to have the case dismissed as soon as possible.

L.D. 781, Statement of Fact, at 2 (117th Legis. 1995).

petition the government makes it evident that the anti-SLAPP statute does not apply in the circumstances of this case. *See Driscoll v. Mains*, 2005 ME 52, ¶ 6, 870 A.2d 124 ("When construing a statute, we look to its plain meaning and try to give effect to the legislative intent."); *see also Marabello v. Boston Bark Corp.*, 974 N.E.2d 636, 641-42 (Mass. 2012) (concluding that the dismissal of the claim was unwarranted under the Massachusetts anti-SLAPP statute because the plaintiff landlord's claims were based on zoning violations and the tenant's failure to remove mulch from the landlord's property).

[¶15]　Other remedies exist for a citizen whose rights to petition the government are allegedly suppressed due to government ordinances or enforcement actions, including a federal section 1983 action or a state constitutional challenge. *See* Me. Const. art. I, § 4; 42 U.S.C. § 1983 (2012); *Cutting v. City of Portland*, No. 2:13-CV-359-025, 2014 WL 580155, *9 (D. Me. Feb. 12, 2014) (striking down a Portland City ordinance barring panhandling in median strips of local highways as a content-based restriction on free speech).

[¶16]　Accordingly, because, except possibly in extraordinary circumstances not presented here, the Town's enforcement action against the Cayers for a land use violation is not an appropriate occasion for application of the anti-SLAPP statute, the Cayers' special motion to dismiss should have been denied.

[¶17] We need not reach the Cayers' arguments that the special motion to dismiss was timely, or, alternatively, that the court abused its discretion in refusing to allow filing of the motion outside of the sixty-day period. 14 M.R.S. § 556; *see also Bradbury*, 2013 ME 72, ¶¶ 11-12, 72 A.3d 512. Because we conclude that this was not an appropriate circumstance for application of the anti-SLAPP statute, we affirm the judgment for reasons different from those stated by the trial court. *See Fitch v. Doe*, 2005 ME 39, ¶ 21, 869 A.2d 722.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Luke M. Rossignol, Esq., Bemis & Rossignol, LLC, Presque Isle, for appellants Richard Cayer and Ann Cayer

Richard L. Currier, Esq., and Jon P. Plourde, Esq., Currier & Trask, P.A., Presque Isle, for appellee Town of Madawaska

Aroostook County (Caribou) Superior Court docket number CV-2012-155
FOR CLERK REFERENCE ONLY