MAINE SUPREME JUDICIAL COURT Reporter of Decisions
Decision: 2017 ME 87
Docket: Yor-15-550
Argued: June 10, 2016
Decided: May 9, 2017

Panel: SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

NORMAN GAUDETTE et al.

v.

MAINELY MEDIA, LLC, et al.

ALEXANDER, J.

[¶1] Mainely Media, LLC, Molly Lovell-Keely, and Benjamin Meiklejohn (collectively, Mainely Media) appeal from an order of the Superior Court (York County, *O'Neil, J.*) denying their special motion to dismiss the complaint of Norman Gaudette and Joanne Gaudette pursuant to Maine's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, 14 M.R.S. § 556 (2016). Because the anti-SLAPP statute does not apply to Mainely Media's publication of the newspaper articles at issue in this case, we affirm the trial court's order.

I. CASE HISTORY

[¶2] The record supports the following facts. *See Nader v. Me. Democratic Party* (*Nader II*), 2013 ME 51, ¶ 2, 66 A.3d 571.

[¶3]  In 1990, Norman Gaudette was a detective with the Biddeford Police Department.  Allegations surfaced that Gaudette had sexually abused several teenage boys.  Along with an internal investigation by the Biddeford Police Department, the allegations were referred to and investigated by the Maine Attorney General's Office.  In 1991, a York County grand jury, after a presentation by the Attorney General's Office, voted not to indict Gaudette.  He continued to work for the Biddeford Police Department until he retired in 2001.

[¶4]  In February 2015, an individual alleging that he had been the victim of sexual abuse committed by a different Biddeford police officer began posting about the alleged abuse on social media.  Meiklejohn and Lovell-Keely, a reporter and an editor, respectively, for the Biddeford-Saco-OOB Courier, a newspaper owned by Mainely Media, began reporting on the new allegations.  Their work led them to interview and publish reports regarding statements made by several of Gaudette's alleged victims and Terry Davis, the Biddeford police officer who originally brought the 1990 allegations against Gaudette to the Police Department's attention.

[¶5]  As a result of the 2015 allegations involving Gaudette and the other Biddeford police officer, members of the public began holding meetings

with members of state and local government to discuss the alleged abuse and possible reforms. The Biddeford City Council considered placing the police chief and deputy chief on administrative leave, and some government officials began to speak publicly about the allegations and to propose legislation in response.

[¶6] One of Meiklejohn and Lovell-Kelly's articles included Davis's account of the 1991 grand jury proceeding. Davis's statements, as represented in the article, contain the following allegations. A fifteen-year-old boy spoke with Davis at the Biddeford police station and alleged that Gaudette had sexually abused him. Investigations by the Biddeford police and Maine Attorney General's Office identified multiple other alleged victims who claimed that Gaudette had abused them. None of the alleged victims were called to testify before the grand jury, and during Davis's testimony before the grand jury, an Assistant Attorney General surprised Davis by asking him probing questions about Davis's father's suicide after Davis's father was accused of sexually abusing a child, suggesting to the grand jury that Davis was incapable of impartially investigating a child abuse case. Gaudette then testified before the grand jury. The article reported that after the grand jury voted not to indict Gaudette, the Assistant Attorney General went to the

4

Biddeford police station and asked Davis and another officer to meet him at a restaurant in Biddeford, which they did. At the restaurant, the article reported, the Assistant Attorney General "continuously apologized" and told Davis that he "purposely threw the case under the bus" on orders from his superiors.

[¶7]  The Gaudettes filed a complaint against Mainely Media, LLC, Meiklejohn, and Lovell-Keely on June 24, 2015, alleging that they intentionally or recklessly disregarded the truth or falsity of the accounts included in their articles. The complaint included counts of false light portrayal, defamation, intrusion into seclusion, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of consortium, and sought damages for loss of employment, stress, depression, and punitive damages.

[¶8]  On August 24, 2015, Mainely Media filed a special motion to dismiss pursuant to 14 M.R.S. § 556, which the court denied on October 26, 2015. The court observed that the law is unsettled as to whether Mainely Media's publication of newspaper articles constitutes "petitioning activity" within the meaning of the anti-SLAPP statute, but determined that this question was not dispositive because Gaudette had met his burden to

show that Mainely Media's purported petitioning activity was devoid of reasonable factual support. *See* 14 M.R.S. § 556. This appeal followed.[1]

## II. LEGAL ANALYSIS

[¶9]  Mainely Media argues that its anti-SLAPP motion should have been granted because the articles constitute a "petitioning activity" for anti-SLAPP purposes and because Gaudette failed to show that Mainely Media's petitioning activity was devoid of reasonable factual support.

[¶10]  Although the order denying Mainely Media's motion is not a final judgment, interlocutory appeals from denials of anti-SLAPP motions are permitted. *See Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 8, 103 A.3d 547. We review the denial of an anti-SLAPP motion de novo. *Id.*

[¶11]  Ruling on an anti-SLAPP motion requires a multi-step analysis. First, the moving party "must demonstrate that the anti-SLAPP statute applies by showing that the claims against it are based on the exercise of that party's constitutional right to petition." *Nader II*, 2013 ME 51, ¶ 13, 66 A.3d 571; *accord Gaudette v. Davis*, 2017 ME 86, ¶¶ 8, 16, --- A.3d ---. If the moving party succeeds at the first step, the burden shifts to the nonmoving party to produce "prima facie evidence that at least one of the moving party's petitioning

---

[1]  *See also Gaudette v. Davis*, 2017 ME 86, --- A.3d ---, also decided today.

activities was devoid of any reasonable factual support or any arguable basis in law and caused actual injury to the non-moving party."  *Nader II*, 2013 ME 51, ¶ 14, 66 A.3d 571 (alterations omitted); *accord Gaudette v. Davis*, 2017 ME 86, ¶¶ 9, 17, --- A.3d ---.  If the nonmoving party meets this prima facie burden, the parties may seek an additional procedure for the evaluation of whether the plaintiff's claims may proceed.  *Gaudette v. Davis*, 2017 ME 86, ¶ 18, --- A.3d ---.

[¶12]  The anti-SLAPP statute permits a defendant to file a special motion to dismiss a lawsuit "brought with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation costs." *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226.  The anti-SLAPP statute applies only if the activity the plaintiff complains of constitutes "petitioning activity," which the statute defines as

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such

consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556. We have interpreted this language as broadly inclusive. *Schelling*, 2008 ME 59, ¶ 12, 942 A.2d 1226.

[¶13] We have not addressed whether a newspaper may utilize the anti-SLAPP statute when it is facing a defamation claim based on its reporting. We have, however, interpreted "petitioning activity" to include a letter to the editor published in a newspaper where the letter was "designed to expand the public consideration of a controversial issue recently considered by the Legislature" and where the letter writer was the party seeking dismissal pursuant to the anti-SLAPP statute. *Id.* ¶ 13. Additionally, we have held that the statute applies to a defendant's letters addressed to the City Council and Mayor and statements made to a newspaper where these communications were published in a newspaper. *Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶¶ 3, 7, 847 A.2d 1169.

[¶14] The Massachusetts Supreme Judicial Court has held that the Massachusetts anti-SLAPP statute[2] does not apply to a reporter's statements made in articles about a local development project because the articles did not

---

[2] Mass. Ann. Laws ch. 231, § 59H (LexisNexis 2016) is substantively identical to Maine's anti-SLAPP statute.

constitute "statements seeking to redress a grievance or to petition for relief *of her own*." *Fustolo v. Hollander*, 920 N.E.2d 837, 842 (Mass. 2010). The Massachusetts court noted that, in an affidavit, the reporter stated that "while she had personal views on the issues she covered, 'they were not reflected in the articles [she] wrote.'" *Id.*

[¶15] The Massachusetts court's interpretation of its anti-SLAPP statute provides useful guidance for interpreting Maine's statute, which applies when the moving party asserts that claims "against the moving party are based on the moving party's exercise of *the moving party's* right of petition." 14 M.R.S. § 556 (emphasis added). Unless a newspaper is petitioning on its own behalf, the newspaper is not exercising its own right of petition. Here, the newspaper was documenting current events, which included documenting others' exercise of their right to petition. Mainely Media itself may have had views on the alleged abuse and how government should respond to the alleged abuse, but those views were not communicated in the articles. *Cf. Fustolo*, 920 N.E.2d at 842.

[¶16] Mainely Media asserts that we have previously held that an attorney's statements to the media on behalf of his client constituted petitioning activity within the meaning of the anti-SLAPP statute, despite the

fact that the attorney was not petitioning on his own behalf. *See Maietta Constr., Inc.*, 2004 ME 53, ¶¶ 3, 7, 847 A.2d 1169. An attorney-client relationship, which includes agency duties, is distinguishable from whatever relationship, if any, a newspaper has with the subjects of its articles.

[¶17] The language of Maine's anti-SLAPP statute restricts its application to suits based on "exercise of the moving party's right of petition," 14 M.R.S. § 556, and the purpose of the right of petition is to protect expression that seeks redress from government, *see Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011) ("The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives . . . ."); *see also Morse Bros. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842 ("'The typical mischief that the [anti-SLAPP] legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects.'" (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 940 (Mass. 1998))). Maine's anti-SLAPP statute is not applicable to newspaper articles unless those articles constitute the newspaper petitioning on its own behalf or the party seeking to invoke the anti-SLAPP statute is a party that used the newspaper to broadcast the party's own petitioning activities.

[¶18]  Pursuant to this interpretation, Mainely Media's articles at issue in this appeal do not constitute petitioning activity within the meaning of the anti-SLAPP statute.[3]  Because we hold that the anti-SLAPP statute does not apply to Mainely Media's publication of the articles at issue in this case, we do not reach any additional steps of the anti-SLAPP analysis.  *See Gaudette v. Davis*, 2017 ME 86, ¶ 16, --- A.3d ---.

The entry is:

Judgment affirmed.

James B. Haddow, Esq., (orally), Petruccelli, Martin & Haddow, LLP, Portland for appellants Mainely Media, LLC, Molly Lovell-Keely, and Benjamin Meiklejohn

Gene R. Libby, Esq., and Tara A. Rich, Esq., (orally), Libby O'Brien Kingsley & Champion LLC, Kennebunk, for appellee Norman and Joanne Gaudette

York County Superior Court docket number CV-2015-123
FOR CLERK REFERENCE ONLY

---

[3]  Because the news reports at issue in this appeal do not constitute petitioning activity, we need not speculate on when news reporting or editorializing might constitute petitioning activity.