STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AUGSC-CV-2021-94



MICHAEL J. CIANCHETTE,

    Plaintiff,

v.

TUCKER CHEVROLET, INC.,
JACK STEERUM, LLC,
TUCKER J. CIANCHETTE,
KELLY, REMMEL, & ZIMMERMAN,
and TIMOTHY NORTON,

    Defendants.

**DECISION AND ORDER**

## INTRODUCTION

On June 7, 2019, Defendant Tucker Cianchette ("Tucker") submitted a bar complaint against Plaintiff with the Maine Board of Bar Overseers ("the Board"). In response to the allegations in that bar complaint, Plaintiff initiated the present action against Tucker, Jack Steerum, LLC, and Tucker Chevrolet, Inc. as well as Tucker's attorneys, Kelly, Remmel, & Zimmerman and Timothy Norton (collectively "the Attorney Defendants"). In the motions pending before the court, all Defendants seek to dismiss Plaintiff's complaint under M.R. Civ. P. 3. Additionally, Defendants Tucker, Jack Steerum, LLC, and Tucker Chevrolet separately move for dismissal pursuant to Maine's Anti-SLAPP statute and M.R. Civ. P. 12(b)(6). All motions have been fully briefed, and a decision is in order.

## FACTS/BACKGROUND

By way of some background, Plaintiff and Tucker are half-brothers. Many of the allegations in the bar complaint center around Plaintiff's representation of PET LLC

1

("PET"), an entity owned by three members of the Cianchette family. Those three family members are: Tucker, Eric Cianchette (the father of Plaintiff and Tucker), and Peggy Cianchette (Plaintiff's mother and Tucker's stepmother). For additional context regarding the interfamilial dispute that preceded this action, *see Cianchette v. Cianchette*, 2019 ME 87, 209 A.3d 745.

*Plaintiff's Complaint.* Plaintiff filed the complaint in this matter on June 3, 2021. He alleges that Tucker made certain statements within the bar complaint and during the Board proceedings that were false and defamatory and/or unsupported. Specifically, Plaintiff asserts that:

- Tucker accused Plaintiff of absconding with his mail as well as "engag[ing] and/or aid[ing] directly in fraud, forgery, perjury, misrepresentations, dishonesty, deceit, unauthorized taking, and self-serving among other things." Tucker made these allegations notwithstanding the fact that Plaintiff has never been formally accused or convicted of a crime.

- With respect to a Merrill Lynch bank account Plaintiff opened on PET's behalf, Tucker stated that the opening balance of the account was $750,000 when it was actually $600,000.

- Tucker claimed that Peggy requested to pick up the check providing for the opening balance of the Merrill Lynch account, when in fact it was Tucker who delivered the check to Plaintiff.

- Tucker requested that the board investigate certain deeds executed by Plaintiff without citing any legal authority.

Moreover, Plaintiff alleges that Tucker told third parties about the bar complaint and its content. The complaint also names Tucker's attorneys, the firm Kelly, Remmel, and Zimmerman as well as Attorney Timothy Norton, and accuses them of providing material assistance with respect to the bar complaint. According to Plaintiff, responding to the bar complaint was time consuming and necessitated the hiring of experts and counsel, which required plaintiff to expend funds. Plaintiff requests damages, including punitive damages, as well as an order enjoining Defendants from filing complaints against Plaintiff without prior leave of the court.

Plaintiff pursues relief in four counts. Counts I-III pertain to the conduct of Tucker, Jack Steerum, LLC, and Tucker Chevrolet, Inc., asserting claims of Defamation/False

Light (Count I), Wrongful Use of Civil Proceedings/Malicious Prosecution (Count II), and Tortious Interference with an Advantageous Relationship (Count III). Count IV, meanwhile, brings a claim of Civil Conspiracy/Aiding and Abetting against Attorney Defendants.

***Service/Defendants' Rule 3 Motions***. After filing the complaint in this matter, Plaintiff submitted three motions seeking additional time to serve process on the Defendants—the first filed on September 1, 2021, the second on December 28, 2021, and the third on March 2, 2022. The first motion was granted, but the second and third were denied. On April 11, 2022, the court issued a form notice indicating that the action would be dismissed pursuant to M.R. Civ. P. 3 unless Plaintiff filed a timely motion to remain on the docket. Plaintiff filed such a motion, which the court granted. The Defendants were thereafter served, with Plaintiff filing the returns of service on July 11, 2022. All Defendants have moved for dismissal pursuant to M.R. Civ. P. 3. The facts relevant to the Rule 3 motions are set forth in greater detail below.

***Special Motion to Dismiss.*** In August 2022, Tucker filed a special motion to dismiss pursuant to Maine's anti-SLAPP statute, asserting that all claims against him are based on his constitutionally protected petitioning activity—specifically, his filing of the bar complaint with the Board.[1] Additionally, Tucker, Jack Steerum, LLC, and Tucker Chevrolet, Inc. have moved for dismissal on Rule 12(b)(6) grounds. In support, Tucker has submitted his own affidavit and various accompanying documents, including a copy of the bar complaint itself. A brief summary of the allegations in the bar complaint is in order.

In the bar complaint, Tucker accused Plaintiff of multiple violations of the rules of professional conduct, and—as Plaintiff asserts in his complaint—"engag[ing] and/or aid[ing] directly in fraud, forgery, perjury, misrepresentations, dishonesty, deceit, unauthorized taking, and self-serving among other things." To support these allegations, Tucker provided a multi-page narrative, in which he cited to deposition testimony and various exhibits. In that narrative, Tucker asserted, among other things, that:

---

[1] Attorney Defendants have not pursued dismissal on anti-SLAPP or Rule 12(b)(6) grounds.

- Plaintiff helped orchestrate the opening of a Merrill Lynch bank account where hundreds of thousands of dollars of PET money was deposited.
- Plaintiff forged Tucker's signature on several documents needed to open the Merrill Lynch account.
- Plaintiff facilitated a $375,000 "no interest or repayment schedule loan" from PET funds held in the Merrill Lynch account to a corporate entity in which Plaintiff held a beneficial interest. Plaintiff, however, failed to disclose his interest to Tucker.
- Plaintiff perjured himself in a separate proceeding. Specifically, Plaintiff falsely testified that Tucker signed the Merrill Lynch documents when Plaintiff collected a check from Tucker on September 15, 2014.[2]
- Plaintiff engaged in unethical behavior with respect to Tucker's proposed buyout of Peggy and Eric's interests in PET.
- After Tucker involved authorities regarding some mail that went missing, it was discovered that "[Plaintiff] did have knowledge of [Tucker's] absconded mail." This created unnecessary work for the investigating authorities and made "an outright mockery of the US Postal Service."

Along with the bar complaint, Tucker's motion papers also included a copy of the Board's decision dated March 3, 2022. In that decision, a three-member panel unanimously found violations with respect to three of the four counts alleged. Specifically, the Board determined that Plaintiff (1) violated M.R. Prof. C. 4.1 by "intentionally" signing the Merrill Lynch documents without Tucker's authorization; (2) violated M.R. Prof. C. 1.8(a) by failing to obtain informed consent prior to facilitating a loan to an entity in which Plaintiff held a financial interest, and; (3) violated M.R. Prof. C. 1.13(f) by failing to disclose his representation of Peggy and Eric during the proposed buyout of PET and by failing to obtain Tucker's consent.

In opposition to the motion, Plaintiff has submitted his own affidavit. Plaintiff's affidavit notes that he has never been arrested, charged, or convicted of a crime. He further characterizes Tucker's claim that Peggy requested to pick up the check as false.

---

[2] To support his claim that Plaintiff's version of events was untrue, Tucker stated, *inter alia*, that he had no memory of signing the documents; that he was out of town from September 14-16, 2014; that the person signing the documents made a mistake when transcribing Tucker's address; and that Peggy had requested to pick up the check herself.

Additionally, Plaintiff provided his account of the circumstances surrounding Tucker's missing mail. Plaintiff explained that mail addressed to Tucker's business, Tucker Chevrolet, had been delivered to a property that Plaintiff managed. A tenant of that property contacted Plaintiff, and Plaintiff retrieved the mail. Plaintiff then provided the mail to his attorney with a request that the mail be delivered to Tucker's counsel. In a separate affidavit, Plaintiff's attorney confirmed that Plaintiff had given him the mail, after which it was hand-delivered to Tucker's attorneys.

With respect to his injuries, Plaintiff states that "[a]fter the Bar Complaint was filed … [he] expended funds to retain and obtain the assistance of counsel from the firm of Rudman Winchell." Moreover, "[a]fter the Board's investigation was complete, [he] expended funds to retain and obtain the assistance of counsel from the firm of Richardson, Whitman, Large, and Badger. [H]e further expended funds for expert witness testimony with the firm of Thompson Bowie, and Hatch."

While Tucker provided the court with a copy of the Board's decision and the bar complaint, Plaintiff has not produced copies of any of the documents filed in connection with the underlying proceedings before the Board.

## DISCUSSION

### I. Special Motion to Dismiss (anti-SLAPP)

A Strategic Lawsuit Against Public Participation ("SLAPP") is a lawsuit filed with the goal of stopping "'citizens from exercising their political rights or to punish them for having done so.'" *Thurlow v. Nelson*, 2021 ME 58, ¶ 8, 263 A.3d 494. To avoid a chilling effect on the right to petition, many states have passed anti-SLAPP statutes. *Id.* Maine's is found at 14 M.R.S. § 556:

> When a moving party asserts that the civil claims . . . against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. . . . The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition

was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556.

This statutory framework has given rise to a two-step analysis that was adopted by the Law Court in *Morse Bros. v. Webster*, 2001 ME 70, ¶ 19, 772 A.2d 842, refined in *Nader v. Me. Democratic Party*, 2012 ME 57, ¶¶ 31-33, 41 A.3d 551, and refashioned in *Thurlow*, 2021 ME 58, ¶ 19, 263 A.3d 494.

The first step, a question of law, decides whether the anti-SLAPP statute applies. *Nader*, 2012 ME 57, ¶ 15, 41 A.3d 55 (hereinafter *Nader I*). At this step, the party seeking special dismissal (the moving party) carries the burden of demonstrating that "'the claims against the moving party are based on the moving party's exercise of the right to petition pursuant to the federal or state constitutions.'" *Thurlow*, 2021 ME 58, ¶ 12, 263 A.3d 494. If the moving party establishes that the anti-SLAPP statute applies, the burden shifts to the non-moving party (typically the plaintiff) to satisfy the second step of the procedure. *Nader v. Me. Democratic Party*, 2013 ME 51, ¶ 13, 66 A.3d 571 (hereinafter *Nader II*).

At the second step, "the court must dismiss the non-moving party's claims unless the non-moving party demonstrates, through the pleadings and affidavits, that the moving party's petitioning activity does not fall within the protection of the anti-SLAPP statute." *Id.* ¶ 14. "This requires prima facie evidence that at least one of the moving party's petitioning activities was 'devoid of any reasonable factual support or any arguable basis in law and . . . caused actual injury to the [non-moving party].'" *Id.*; *see also Thurlow*, 2021 ME 58, ¶ 19, 263 A.3d 494.

The court considers Tucker's special motion to dismiss in light of this two-step analysis.

### A. Step 1 of the anti-SLAPP analysis

The first step requires the court to determine whether the complaint alleges any conduct that may be characterized as an "exercise of the right of petition." If so, the court

then must decide the extent to which the plaintiff's claims are "based on" those petitioning activities. These questions are addressed separately below.

### 1. Petitioning Activities

The anti-SLAPP statute defines the type of conduct that is subject to its protections. Specifically, the statute defines "a party's exercise of its right of petition" to include:

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556.

Here, Plaintiff's complaint appears to take issue with two categories of Tucker's statements: (1) statements made in the bar complaint and during the proceedings before the Board and (2) statements to third parties regarding the bar complaint and its substance. The court has no doubt that the first category of statements qualifies as an exercise of the right to petition. Indeed, the Board "is a quasi-judicial agent of the [Supreme Judicial] Court." M. Bar R. 12. Thus, by filing the bar complaint and participating in the grievance process, Tucker was expressing his concerns to a "judicial body" or other governmental entity about a licensed Maine attorney's professional conduct.

The second category of statements—communications to third parties regarding the existence and content of the bar complaint—presents a closer call. With respect to this category, Tucker observes that 14 M.R.S. § 556's definition of petitioning activity includes "any written or oral statement made in connection with an issue under consideration or review" by a governmental entity. Such a definition, Tucker argues, is broad enough to capture the third-party statements at issue here. The critical question before the court, then,

is whether the statements were made "in connection with" the Board's consideration of the bar complaint, such that they constitute petitioning activity under the anti-SLAPP statute.

Finding no Law Court decisions on point, both Plaintiff and Tucker point the court to Massachusetts case law interpreting the scope of Massachusetts's nearly identically worded anti-SLAPP statute. The court agrees that Massachusetts decisions provide useful guidance. *See Gaudette v. Mainely Media, LLC*, 2017 ME 87, ¶ 15, 160 A.3d 539 ("The Massachusetts court's interpretation of its anti-SLAPP statute provides useful guidance for interpreting Maine's statute"). Notably, the Supreme Judicial Court of Massachusetts has held that "[t]o fall under the 'in connection with' definition of petitioning under the anti-SLAPP statute, a communication must be 'made to influence, inform, or at the very least, reach governmental bodies — either directly or indirectly.'" *Blanchard v. Steward Carney Hosp.*, 75 N.E.3d 21, 30 (Mass. 2017). "The key requirement of this definition of petitioning is the establishment of a plausible nexus between the statement and the governmental proceeding." *Id.*

In *Blanchard*, for instance, the court addressed a hospital's statements regarding the termination of several nurses made while a governmental investigation into patient abuse allegations was pending. *Id.* at 30-33. Two types of communications were at issue: statements made in an internal staff email and statements made to the Boston Globe. *See id.* While the court concluded that the Boston Globe statements were protected, the statements in the staff email were outside the anti-SLAPP statute's scope. *Id.* Unlike the Boston Globe statements, the staff email was a "private statement to a select group of people" without "any audience for the message other than hospital employees." *Id.* at 32. Absent any evidence that the communication was reasonably likely to reach a governmental official or entity, it did not fall under the "in connection with" definition of petitioning activity. *Id.* at 30-33.

Similarly here, Tucker's private conversations with third-parties regarding the bar complaint do not qualify for protection under the anti-SLAPP statute. The court reaches this conclusion notwithstanding Tucker's affidavit, which asserts that the third-party conversations were limited to confirming the bar complaint's existence and describing

8

some of its allegations. While these assertions may ultimately give rise to a colorable truth defense to Plaintiff's defamation claim, they do not convince the court that Tucker's private communications constitute petitioning activity. Indeed, there is no indication that his communications—even if only mere reiterations of the bar complaint—were made to influence, inform, or otherwise reach a governmental body. *Id.* at 30.[3] Thus, while Tucker's statements in the bar complaint were protected petitioning activity, his statements to the third-party individuals were not.

2. *Whether Plaintiff's claims are "based on" petitioning activity.*

The anti-SLAPP statute is silent with regard to how a moving party must show that a claim is "based on" the right of petition. *Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 12, 103 A.3d 547. The Law Court, however, has accepted the Massachusetts approach as articulated in *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935 (Mass. 1998): "[T]he moving party must show that the claims at issue are 'based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.'" *Cayer*, 2014 ME 121, ¶ 12, 103 A.3d 547; *Nader I*, 2012 ME 57, ¶ 22, n.9, 41 A.3d 551. Further, the Law Court has explained that "discrete claims within a single action may be individually dismissed pursuant to a special motion to dismiss, and only the claims specifically based on the moving party's petitioning activity are properly considered for dismissal." *Pollack v. Fournier*, 2020 ME 93, ¶ 14, 237 A.3d 149. Thus, the court examines each claim alleged in the complaint to determine whether the claim is based on petitioning activity and subject to dismissal under the anti-SLAPP statute

Here, Plaintiff asserts three claims against Tucker: Defamation/False Light (Count I), Wrongful Use of Civil Proceedings/Malicious Prosecution (Count II), and Tortious Interference with an Advantageous Relationship (Count III). Plaintiff concedes that Count

---

[3] Tucker likens the statements in this case to those involved in *Wynne v. Creigle*, in which the court found petitioning activity where the statements at issue "were essentially mirror images" of those made during a governmental investigation. 825 N.E.2d 559, 566 (Mass. App. Ct. 2005). The court finds *Wynne* distinguishable because the statements in that case were made to a newspaper; thus, they were reasonably likely to reach a governmental body.

II is based solely on Tucker's petitioning activity. Moreover, Plaintiffs' Tortious Interference count specifically alleges that Tucker "interfered with Plaintiff's economic relationship by filing fraudulent claims with the Board." Thus, the court finds that the Tortious Interference count, as pleaded in the complaint, is based solely on Tucker's protected petitioning conduct before the Board.

Plaintiff's single Defamation claim is broad and appears to encompass Tucker's statements to the Board—which qualify as protected petitioning activity—as well as Tucker's statements to third-parties—which are unprotected. Thus, to the limited extent that Plaintiff's Defamation claim is based on Tucker's unprotected statements to third-parties, the special motion to dismiss is denied. Tucker, however, has met his burden under Step 1 with respect to Wrongful Use of Civil Proceedings/Malicious Prosecution (Count II), Tortious Interference (Count III), and to the portion of the Defamation claim (Count I) that is based on Tucker's protected statements before the Board.

### B. Step 2 of the anti-SLAPP analysis

Having determined that the anti-SLAPP statute applies to the extent described above, the burden now shifts to Plaintiff to present the court with prima facie evidence that the petitioning activities were devoid of factual or legal support. *Thurlow*, 2021 ME 58, ¶ 19, 263 A.3d 494. In deciding whether this burden has been satisfied, the focus "is on whether the facts as presented by [the plaintiff], if believed, would prove that the [moving party's] allegations are devoid of any reasonable factual support or have no arguable basis in the law." *Id.* ¶ 26. "[T]he plaintiff need[s] only to meet this burden as to any *one* of the petitioning activities at issue." *Id.* (emphasis original).

Plaintiff's burden at Step 2 also requires prima facie evidence that the challenged "petitioning activit[y] . . . caused actual injury" to him. *Id.* ¶ 19 (quotation marks omitted). The Law Court has interpreted "actual injury" to mean "'a reasonably certain monetary valuation of the injury suffered by the plaintiff.'" *Weinstein v. Old Orchard Beach Family Dentistry, LLC*, 2022 ME 16, ¶ 7, 271 A.3d 758. Additionally, "[t]he existence of actual injury may be considered in this analysis only to the extent that the asserted injury was

10

both alleged in the complaint and established on a prima facie basis in opposition to the special motion to dismiss." *Id.* ¶ 8.

Here, Plaintiff falls short of meeting his burden. At the outset, the court notes that Plaintiff failed to present documents germane to the court's inquiry under Step 2. *Nader II*, 2013 ME 51, ¶¶ 20, 22. 66 A.3d 571. For instance, Tucker cited to deposition testimony and various exhibits in his bar complaint, relying on these sources to support his allegations. Tucker's bar complaint was also the subject of a multi-day hearing before the Board. Yet, Plaintiff has not produced a transcript of the hearing or copies of the documents relied upon in the bar complaint. In *Nader II*, the plaintiff's failure to introduce relevant documents of this nature was important to the Law Court in determining that the plaintiff failed to meet his burden. *See id.* Similarly here, the court has been left to speculate about the substance of documents and proceedings that are critical to assessing the factual and legal basis for Tucker's claims.

More fundamentally, the court is unable to conclude that Plaintiff satisfied his burden where the Board found validity in many of Tucker's core allegations and ultimately determined that Plaintiff violated multiple rules of professional conduct. For example, consistent with the allegations in the bar complaint, the Board found that Plaintiff signed certain documents in Tucker's name without Tucker's authorization and that Plaintiff's "conduct was intentional." The Board also found that Plaintiff facilitated a business transaction from which he could have financially benefited without disclosing his interest. Plaintiff offers no evidence challenging the factual and legal basis for most of Tucker's primary allegations.

Instead, Plaintiff narrowly focuses on several isolated statements in the bar complaint.[4] In doing so, Plaintiff emphasizes the Law Court's holding that "the plaintiff

---

[4] Plaintiff devotes special attention to Tucker's allegation that Plaintiff "engaged and/or aided directly in fraud, forgery, perjury, misrepresentations, dishonesty, deceit, unauthorized taking, and self-serving among other things." But Plaintiff's affidavit—which merely asserts that Plaintiff has never been the subject of a formal criminal complaint, charge, or conviction—fails to provide prima facie evidence that Tucker's allegation was devoid of any basis in fact or law. Moreover, the court again emphasizes the Board's unchallenged finding that Plaintiff intentionally signed

need only [] meet [his] burden as to any *one* of the petitioning activities at issue." *Thurlow*, 2021 ME 58, ¶ 26, 263 A.3d 494 (emphasis original). Plaintiff and Tucker differ in their interpretation of this language and how "petitioning activit[y]" should be measured in this context. According to Tucker, "petitioning activity" should be measured broadly, and as such, Plaintiff succeeds in satisfying his burden only if he demonstrates that the bar complaint *as a whole* was devoid of any factual and legal basis. Plaintiff, on the other hand, suggests that "petitioning activity" should be measured at the individual statement level, and he need only show that a single sentence within the bar complaint was devoid of a basis in fact or law.

The court is skeptical of Plaintiff's interpretation. *See Nader II*, 2013 ME 51, ¶ 17, 66 A.3d 571 (individual grounds set forth in a complaint challenging the plaintiff's inclusion on the ballot "[we]re not themselves discrete petitioning activities because they [we]re part of a single request for relief"). But in any event, Plaintiff fails to carry his burden even assuming he is correct in this regard. The court thinks that if a plaintiff chooses to challenge a single statement within a complaint as factually and legally devoid, his showing of actual injury must be based on the same. In other words, a plaintiff cannot meet his burden by showing that a *single statement* within a multi-allegation complaint is factually and legally devoid, but that the complaint *as a whole* caused actual injury; the single statement must be the cause of actual injury. *See Thurlow*, 2021 ME 58, ¶ 19, 263 A.3d 494 (requiring prima facie evidence that at least one "petitioning activit[y] was devoid of any reasonable factual support or any arguable basis in law *and . . . caused actual injury* to the [nonmoving party]" (emphasis added) (quotation marks omitted)).

As noted, Plaintiff's affidavit targets the factual and legal basis of certain select statements made in the bar complaint, leaving much of the bar complaint unchallenged. Even assuming these selected statements were devoid of any basis in fact or law, Plaintiff's affidavit does not describe how the statements caused him to suffer any actual injury.

---

Tucker's signature to documents without authorization to do so and submitted those documents to Merrill Lynch. Such conduct could be characterized as "fraud," a "misrepresentation," "forgery," etc., at least as those terms are used in their non-technical sense.

12

Rather, it merely explains that the bar complaint and resultant Board investigation caused him to incur attorney fees and expert expenses—generalized losses incurred defending against the bar complaint in its entirety. For all these reasons, Plaintiff has failed to satisfy his burden.

On a final note, the court is mindful of the purpose of the anti-SLAPP statute: barring lawsuits brought to punish or deter petitioning parties from exercising their constitutional right to petition the government. *Thurlow*, 2021 ME 58, ¶ 8, 263 A.3d 494; *Town of Madawaska v. Cayer*, 2014 ME 121, ¶ 2, 103 A.3d 547. It strikes the court that the claims in this action are precisely of the sort that the statute was designed to preclude. Accordingly, Tucker is entitled to dismissal of Counts II and III in their entirety as well as the portion of Count I based on statements in the bar complaint and before the Board.

## II. <u>Motion to Dismiss (M.R. Civ. P. 12(b)(6))</u>

Defendants Tucker Chevrolet, Inc., Jack Steerum, LLC, and Tucker Cianchette have also moved to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to M.R. Civ. P. 12(b)(6). Because matters outside the pleadings were presented to and not excluded by the court, the 12(b)(6) motion will be treated as one for summary judgment in accordance with Rule 56. After careful consideration, summary judgment will be granted to Defendants Tucker Chevrolet, Inc. and Jack Steerum, LLC.

A motion to dismiss for failure to state a claim calls for a review of the legal sufficiency of the complaint, which is examined in the light most favorable to the plaintiff "'to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Meridian Med. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶ 2, 250 A.3d 122; *see also Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254. As the Law Court has explained, "this standard is forgiving," but it still must "'give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Meridian* 2021 ME 24, ¶ 3, 250 A.3d 122; *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 9, 95 A.3d 79. The court is not bound to accept bare legal conclusions, nor is the mere recital of the

13

elements of a claim enough to survive a Rule 12(b)(6) motion to dismiss. *America v. Sunspray Condo Ass'n.,* 2013 ME 19, ¶ 13, 61 A.3d 1249; *Seacoast Hangar Condo. II Ass'n. v. Martel,* 2001 ME 112, ¶ 16, 775 A.2d 1166.

The rules provide that if, on a Rule 12(b)(6) motion to dismiss, matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. *See* M.R. Civ. P. 12(b). Here, matters outside the pleadings, including affidavits and exhibits, have been presented to and not excluded by the court. The complaint alleges that Tucker Chevrolet, Inc., Jack Steerum, LLC and Tucker Cianchette "collectively filed a Complaint against Plaintiff with the Maine Board of Bar Overseers." *See Complaint at* ¶ 9. Based on the summary judgment record, however, there is no genuine issue of material fact that it was Tucker Cianchette, and only Tucker Cianchette, who filed the bar complaint against the Plaintiff. There is no evidence generating a disputed issue of fact that Tucker Chevrolet, Inc. or Jack Steerum, LLC, had anything to do with the filing of that bar complaint. Accordingly, Defendants Tucker Chevrolet, Inc. and Jack Steerum, LLC are entitled to judgment as a matter of law.[5]

### III. Motion to Dismiss (M.R. Civ. P. 3)

All Defendants have moved to dismiss the complaint pursuant to M.R. Civ. P. 3 because the returns of service were not filed with the court "within 90 days after the filing of the complaint." The procedural history of this case on this issue requires some explanation.

Plaintiff is an attorney licensed to practice law in Maine. He is representing himself in this action. On June 3, 2021, the Plaintiff filed the complaint in this matter. On September 1, 2021, he filed the first Motion to Enlarge Time to Serve Process. That motion

---

[5] Tucker also argues that he is entitled to dismissal pursuant to Rule 12(b)(6) because all claims against him are subject to Maine's litigation privilege. The disposition of the claims on anti-SLAPP grounds renders it unnecessary to reach this argument. To the extent Plaintiff's claim survives the anti-SLAPP motion, it survives only with respect to Plaintiff's allegations regarding Tucker's statements to third-parties. Statements to third parties made outside the Board proceedings are not protected.

was granted by the court (Stokes, J.) the following day, September 2, 2021. The Order signed by the court, which was drafted by the Plaintiff, purported to enlarge the time "to serve process on the Defendants to December 31, 2021."

On December 28, 2021, the Plaintiff filed his second Motion to Enlarge Time to Serve Process until March 31, 2022. That motion was denied by the court (Stokes, J.) on January 25, 2022. The Plaintiff has stated that he did not receive a copy of that Order.

On March 2, 2022, the Plaintiff filed his third Motion to Enlarge Time to Serve Process to May 31, 2022. This motion was denied by the court (Stokes, J.) on April 11, 2022. Also issued on April 11, 2022, was a form "DISMISSAL UNDER RULE 3," which stated:

> If no motion to remain on the docket is filed within fourteen days of the date of this Order, the following cases [Cianchette v. Tucker Chevrolet, Inc., et al CV-2021-94] are dismissed without prejudice and without further notice under M.R. Civ. P. 3 due to no return of service having been filed.

On April 22, 2022, the Plaintiff filed a Motion to Remain on the Docket. The court (Stokes, J.) granted that motion and signed an order drafted by Plaintiff that stated that within 60 days of the order:

> Plaintiff shall deliver the Complaint to an authorized person for service upon the Defendants, or otherwise serve said Complaint on the Defendants. In the event Plaintiff fails to serve the Complaint in accordance with this Order, the matter shall be dismissed without prejudice.

The Plaintiff filed the returns of service on July 11, 2022. All of the Defendants filed timely answers to the complaint on July 20, 2022. On August 18, 2022, Defendants Kelly, Remmel and Zimmerman and Timothy Norton, Esq., moved to dismiss the complaint pursuant to Rule 3. On August 29, 2022, Defendants Tucker Chevrolet, Jack Steerum, LLC, and Tucker Cianchette also moved to dismiss under Rule 3.

M.R. Civ. P. 3 provides for two methods of commencing a civil action. The first is by serving the complaint and summons upon the defendant. If this method is used, the complaint must be filed with the court within twenty days of the completion of service. The second method, which is the one the Plaintiff used in this case, is by filing the

complaint with the court. If this method is used, "the return of service shall be filed with the court within 90 days after the filing of the complaint." Under either method, "[i]f the complaint or the return of service is not timely filed, the action may be dismissed on motion and notice . . . ." In this case, it is undisputed and the court can take judicial notice of its own records, that the complaint was filed on June 3, 2021, but the returns of service were not filed until July 11, 2022, more than 13 months later.

The court acknowledges that it lacked familiarity with the history of litigation involving the parties here when the Plaintiff filed the complaint in June 2021, and later when he repeatedly moved to "extend the time to serve process." The court did not understand the context of what was going on or what the Plaintiff was trying to achieve by filing the complaint with the court but not serving the Defendants as required under Rule 3.

In considering the motion to dismiss under Rule 3, the court notes that at no time did the Plaintiff file a motion to enlarge the time within which to file the returns of service. Rather, he filed three motions to enlarge the time within which to serve process. Although the first motion was granted, the last two were denied. Because the time within which to file the returns of service had expired, the provisions of Rule 6(b)(2) apply, namely, the Plaintiff must show that his failure to timely file the returns of service was the result of excusable neglect.

For his part, the Plaintiff heavily relies upon the court's Order granting his motion to remain on the docket dated May 2, 2022 (Docket Order). That Docket Order, however, did not purport to find "excusable neglect" for the failure to timely file the returns of service, nor did it purport to pre-determine how a motion to dismiss under Rule 3 would be decided. Indeed, Rule 3 itself contemplates that dismissal of an action for failure to file the return of service in a timely manner will be made "on motion and notice . . . ." No motion to dismiss under Rule 3 could have been made in May 2022 for the obvious reason that the Defendants were unaware that the complaint had been filed. The Docket Order allowed the matter to remain on the docket, but it did not preclude the Defendants from arguing that Rule 3 was not followed and moving for dismissal.

Moreover, the Plaintiff's claim that he has met the excusable neglect showing because he did not receive a copy of the court's January 25, 2022 Order denying his second motion to extend the time to serve process is unavailing. The court accepts the Plaintiff's representation that he did not receive a copy of that Order. Nevertheless, as noted above, the Plaintiff never filed a motion to extend the time within which to file the returns of service. On the contrary, he filed multiple motions to extend the time to serve process, a procedural device that does not appear to be recognized by Rule 3. In any event, the source of the confusion in this case is the Plaintiff's own actions and his decision to proceed in the manner he did, namely, filing the complaint with the court but wishing to keep the Defendants ignorant of its existence. The Plaintiff's rationale for this is not a mistake or excusable neglect, but a deliberate decision to keep the Defendants in the dark until the bar complaint was resolved.

In the exercise of its discretion, the court concludes that dismissal of the complaint without prejudice as to all Defendants is warranted pursuant to Rule 3. *See Dalot v. Smith*, 551 A.2d 448 (Me. 1988)

## CONCLUSION

The entry is:

The special motion to dismiss pursuant to 14 M.R.S. § 556, filed by Defendant Tucker Cianchette, is GRANTED, except as to that portion of the Complaint alleging that Tucker Cianchette made statements to third parties about the bar complaint and its substance.

The motion to dismiss for failure to state a claim upon which relief may be granted pursuant to M.R. Civ. P. 12(b)(6), filed by Defendants Tucker Chevrolet, Inc. and Jack Steerum, LLC, is GRANTED.

The motion to dismiss without prejudice pursuant to M.R. Civ. P. 3, filed by all Defendants, is GRANTED.

17

The Clerk is directed to incorporate this Order into the docket of this case by reference in accordance with M.R. Civ. P. 79(a).

Date: January 6, 2023

William R. Stokes
Justice

Entered on the docket 1/6/23

18